**IT IS ORDERED as set forth below:**



**Date: September 28, 2022**

_____
**Lisa Ritchey Craig
U.S. Bankruptcy Court Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 3333 ALPHARETTA LIFEHOPE 10 ACRE LAND, LLC, | ) ) | Case No. 22-57594-LRC |
| | ) | Preliminary Hearing: September 28, 2022 at 9:00 a.m. |
| Debtor. | ) ) | |
| 3333 ALPHARETTA LIFEHOPE 10 ACRE LAND, LLC, | ) ) ) | Contested Matter |
| Movant, | ) ) ) | |
| v. | ) ) | |
| CAPITAL ONE, N.A., | ) ) | |
| Respondent | ) | |

**INTERIM ORDER AUTHORIZING DEBTOR'S LIMITED USE OF CASH
<u>COLLATERAL AND GRANTING ADEQUATE PROTECTION</u>**

This matter came before the Court on September 28, 2022 for an initial hearing (the "Preliminary Hearing") on the *Emergency Motion For Entry Of An Interim Order Authorizing Use Of Cash Collateral* [Docket No. 4] (the "Emergency Motion") filed by 3333 Alpharetta Lifehope 10 acre Land, LLC (the "Debtor"). Through the Emergency Motion, the Debtor requests that the Court enter an interim order authorizing the Debtor's limited use of cash collateral pending a final hearing on the Emergency Motion.

Capital One, National Association ("Capital One"), as agent and lender under the Loan Agreement (defined below), filed its *Limited Objection To Debtor's Emergency Motion For Entry Of An Interim Order Authorizing Use Of Cash Collateral* [Docket No. 13] (the "Limited Objection") with respect to the Emergency Motion. Capital One's objections to the entry of an interim order authorizing the Debtor's limited use of cash collateral pending a final hearing are addressed under the terms and conditions of this Interim Order.

Having reviewed and considered the Emergency Motion, the Limited Objection, the representations and argument of counsel at the Preliminary Hearing, and the entire record before the Court, and good and sufficient cause appearing therefor,

**IT IS HEREBY FURTHER FOUND AND CONCLUDED** that:

A.      On September 23, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief with this Court commencing the above-captioned Chapter 11 case (the "Bankruptcy Case"). Pursuant to Bankruptcy Code §§ 1107 and 1108, the Debtor is continuing in possession of its assets and has continued in the operation and management of its business as debtor-in-possession.

B.      This Court has jurisdiction over the Emergency Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. The Emergency Motion presents a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

C. Under the circumstances, proper and sufficient notice of the Emergency Motion, the Preliminary Hearing and the relief granted in this Interim Order has been given by the Debtor.

D. The Debtor is the owner of certain interests in real property and improvements comprising an office building located at 3333 Old Milton Parkway, Alpharetta, Fulton County, Georgia (the "Property").

E. The Debtor is not the owner of the real property underlying the office building. Rather, the Debtor is the ground lessee of the Property pursuant to a Ground Lease Agreement dated as of August 31, 2017 (as amended from time to time, the "Ground Lease") between 3333 Old Milton Alpharetta LLC (the "Ground Lessor"), as landlord, and the Debtor, as tenant.

F. Pursuant to a Loan Agreement dated as of August 30, 2019 (as thereafter amended, the "Loan Agreement") entered by the Debtor, as borrower, and Capital One, as administrative agent, collateral agent, and a lender, Capital One provided a non-revolving loan facility in the maximum principal amount of $32,000,000 to Borrower (the "Loan"). (The Loan Agreement, as amended prior to the Petition Date, together with all collateral and ancillary documents executed in connection therewith are referred to herein as the "Loan Documents", and the principal, interest, fees, expenses and other amounts owing by the Debtor under the Loan Documents are referred to herein as the "Indebtedness").

G. Capital One asserts that, (i) as of the Petition Date, the unpaid principal balance of the Loan is at least $28,302,407.35; and (ii) in addition, accrued and accruing interest (including default interest), costs, fees (including attorney's fees) and other amounts chargeable to the Debtor under the Loan Agreement and other Loan Documents are fully due and owing by the Debtor.

H. Capital One asserts that, as security for repayment of the Indebtedness, Capital One holds valid, perfected, and enforceable liens and security interests in substantially all assets of the Debtor as described in the Loan Documents (collectively, the

"Capital One Collateral"), including, among other things, all funds held by or for the Debtor as of the Petition Date and all rents collected from tenants of the Property.

I. The Capital One Collateral includes cash proceeds and other cash equivalents that are "cash collateral" as defined in Bankruptcy Code §363(a). The Capital One Collateral that is cash collateral will be referred to herein as the "Cash Collateral."

J. Capital One has not consented to any use of its Cash Collateral by the Debtor except only under the express terms and conditions stated in this Interim Order.

K. Under the circumstances of this case, cause exists for the Court to grant the relief provided in this Interim Order, including to provide adequate protection of Capital One's interests in the Cash Collateral in accordance with Bankruptcy Code §§ 363(c)(4) and (e).

Accordingly, based upon the foregoing findings and conclusions, and upon the record made before the Court at the Preliminary Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED** that:

1. The Emergency Motion is hereby granted on an interim basis, subject to the terms and conditions set forth in this Interim Order. All objections to the entry of this Interim Order have either been resolved as stated on the record at the Preliminary Hearing, or shall be overruled for purposes of this Interim Order.

2. Pursuant to Bankruptcy Code § 363(c), the Debtor is authorized to use Cash Collateral under (and only under) the terms and conditions set forth in this Interim Order.

3. Unless terminated earlier under the terms of this Interim Order, the Debtor's authorization to use Cash Collateral under this Interim Order shall terminate on the date scheduled for the Final Hearing stated below in this Interim Order. If the Debtor fails to comply fully with the material terms and conditions of this Interim Order, then Capital One objects to any subsequent use of Cash Collateral by the Debtor, and the Debtor's authorization to use Cash Collateral for any purpose is terminated; provided, however, that

the Debtor may thereafter obtain an emergency hearing on further authority to use Cash Collateral at a hearing set on at least three (3) business days' notice to Capital One and the United States Trustee.  Nothing herein shall be deemed a waiver of (i) the Debtor's right to seek authority to continue its use of the Cash Collateral beyond termination of authority under this Interim Order, or (ii) the right of Capital One or any other party to object thereto.

4. A short-term budget prepared by the Debtor is attached as **Exhibit A** to this Interim Order (the "Budget").  Unless authority to use Cash Collateral under this Interim Order has been terminated earlier as provided herein and subject to the limitations stated below, the Debtor may use Cash Collateral to pay (i) ordinary and necessary operating expenses in accordance with the Budget, or (ii) other specific expenses with the prior written consent of Capital One.  The authority of the Debtor to use Cash Collateral is subject to the following additional limitations -- without the prior written consent of Capital One or further Court order, (a) the Debtor shall not make any payments to any insider or affiliate; (b) the Debtor shall not pay any expenses that would cause aggregate payments for any week under the Budget to exceed 110% of the aggregate amount shown in the Budget for that week; and (c) the Debtor shall not pay any expenses that would cause aggregate payments under any line item of the Budget to exceed 110% of the aggregate amount shown in the Budget for that line item (except that the Debtor may pay amounts in excess of this limitation with respect to the line item for payments to Georgia Power).

5. No later than two (2) business days after the entry of this Interim Order, the Debtor will designate a deposit account as the "Cash Collateral Account" for purposes of this Interim Order, and will provide written notice to the US Trustee and Capital One regarding this designation.  The Debtor shall at all times segregate and sequester all of the Cash Collateral (including, without limitation, all funds held by or for the Debtor and all rents collected from tenants of the Property) in the Cash Collateral Account.  The Debtor may withdraw funds from the Cash Collateral Account only as necessary to pay authorized

5

Case 22-57594-lrc   Doc 17   Filed 09/28/22   Entered 09/28/22 17:53:53   Desc Main
Document      Page 6 of 11

expenses in accordance with the provisions of this Interim Order.  Without limiting the foregoing:

      a.    No later than three (3) business days after the entry of this Interim Order, the Debtor shall (i) deposit all funds it is holding and other Cash Collateral into the Cash Collateral Account, (ii) cause all funds or other Cash Collateral held for the Debtor by any of its principals or affiliates to be returned to the Debtor and deposited into the Cash Collateral Account, and (iii) identify in a written communication to Capital One any funds held for the Debtor by any third party, including the amount of such funds, the third party holding such funds, and the reasons and bases for the third party to be holding funds of the Debtor.  (This provision does not in any way limit or restrict the rights of the Debtor or any other party to investigate, or seek to avoid or recover, any payments or transfers made by the Debtor before or after the commencement of the Bankruptcy Case, and all such rights are expressly reserved.)

      b.    The Debtor shall direct all tenants of the Property to make rent payments directly into the Cash Collateral Account, or shall deposit all such rent payments in the Cash Collateral Account no later than two (2) business days after receipt by the Debtor.

6.    Notwithstanding anything in Bankruptcy Code §552 to the contrary, Capital One shall have and is hereby granted (effective and continuing without the necessity of the execution, filing and/or recordation of mortgages, security agreements, deeds of trust, patent security agreements, trademarks security agreements, pledge agreements, financing statements or otherwise), valid and perfected security interests and liens (the "Replacement Liens") in all of the Debtor's post-petition assets of the type described in the Loan Documents, including, without limitation, the Cash Collateral Account and all other deposit accounts maintained by the Debtor, all cash contained in such deposit accounts, and all rents and other income collected by the Debtor from any source.  The continuing

Replacements Liens held by or granted to Capital One: (i) will secure repayment of the Indebtedness, but will be limited in amount to the total amount of Cash Collateral used by the Debtor from and after the Petition Date; (ii) will be evidenced by the existing Loan Documents and this Interim Order; and (iii) will have the same validity and priority as Capital One's existing liens and security interests under the Loan Documents as of the Petition Date.

7. To the extent the Replacement Liens granted to Capital One do not provide Capital One with adequate protection of its interest in the Cash Collateral, Capital One shall have a super-priority administrative expense claim under Bankruptcy Code §507(b) as necessary to fully compensate Capital One for the use of its Cash Collateral by the Debtor.

8. The Debtor shall provide to Capital One the following financing reports and information:

    a. On each Tuesday after the entry of this Interim Order, the Debtor shall provide to Capital One a written report that includes the following:  (a) the balance of the Cash Collateral Account (in which the Cash Collateral is segregated) at the end of the prior week; (b) a list of all withdrawals from the Cash Collateral Account, and each of the payments funded with those withdrawals; and (c) a list of all deposits in the Cash Collateral Account and the source of those deposits (including the name of tenants making rent payments).

    b. On or before October 3, 2022, the Debtor shall provide to Capital One, with respect to each of the calendar months of May, June, July and August, 2022, an income statement and a cash flow statement.

    c. On or before October 10, 2022 and, thereafter, no later than ten (10) days following the end of each month, the Debtor shall provide to Capital One, with respect to the preceding month, an income statement, a cash flow statement, and a comparison of actual expenses paid against the Budget.

  d. In addition, the Debtor shall promptly provide to Capital One all other financial information related to Cash Collateral or related matters as reasonably requested by Capital One or its attorneys or other representatives.

  9. Nothing in this Interim Order will be deemed or construed as an admission or waiver by Capital One as to adequate protection, or any other issue in the Bankruptcy Case; nor, shall this Interim Order constitute consent by Capital One to the use of its Cash Collateral other than under the terms and conditions expressly provided herein.  In addition, nothing contained in this Interim Order shall prejudice the rights of Capital One to seek any relief that Capital One may deem necessary and appropriate under the circumstances.

  10. Nothing in this Interim Order shall be construed as a finding or conclusion that Capital One or any other party holds a valid security interest, lien, or any interest in any of the Debtor's assets, and all parties' rights with respect to such issues are reserved.

  11. The Court shall hold a final hearing on the Emergency Motion (the "<u>Final Hearing</u>") on **October 27, 2022 at 10:15 a.m.** in Courtroom 1204, United States Courthouse, 75 Ted Turner Drive, Atlanta, Georgia 30303.  Please check the "Important Information Regarding Court Operations During COVID-19 Outbreak" tab at the top of the GANB Website www.ganb.uscourts.gov prior to the hearing for instructions on appearing by phone.

  12. The Court has and hereby retains jurisdiction to enforce this Interim Order according to its terms.

###END OF ORDER###

**Prepared and presented by:**

**ROUNTREE LEITMAN KLEIN**

**& GEER, LLC**

*/s/ Will B. Geer*

Will B. Geer, Ga. Bar No. 940943
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
wgeer@rlkglaw.com
*Proposed Attorneys for the Debtor*

Consented to by:

/s/ Walter E. Jones (w/ express permission)
Walter E. Jones
Georgia Bar No. 163287
BALCH & BINGHAM LLP
30 Ivan Allen, Jr. Boulevard, N.W., Suite 700
Atlanta, Georgia 3030
Telephone: (404) 261-6020
Facsimile: (404) 261-3656
Email: wjones@balch.com

Distribution List

The clerk shall serve a copy of this order on all parties on the mailing matrix.

# Exhibit "A"

| 6-week Budget | | Projected | | | | |
|---|---|---|---|---|---|---|
| | Week 1<br>Friday | Week 2<br>Friday | Week 3<br>Friday | Week 4<br>Friday | Week 5<br>Saturday | Week 6<br>Sunday |
| Week Beginning Date | **9/19/2022** | **9/26/2022** | **10/3/2022** | **10/10/2022** | **10/17/2022** | **10/24/2022** |
| Week Ending Date | **9/23/2022** | **9/30/2022** | **10/7/2022** | **10/14/2022** | **10/21/2022** | **10/28/2022** |
| Prior Week - Beginning Cash | 10,881.76 | 6,405.71 | 92,804.30 | 8,315.83 | 2,886.62 | (635.93) |
| **Operating Cash Flow** | | | | | | |
| Revenue | | | | | | |
| Sonali Bora Enterprises | | 3,538.16 | | | | 3,538.16 |
| The Graivier Center P.C. | | 18,622.29 | | | | 18,622.29 |
| The Graivier Center P.C. | | 10,112.31 | | | | 10,112.31 |
| The Graivier Center P.C. | | 321.95 | | | | 321.95 |
| Pain Physicians of Atlanta | | 21,850.44 | | | | 21,850.44 |
| Pain & Spine Physicians Surgery Center, LLC | | 18,903.99 | | | | 18,903.99 |
| Aient Management Company, LLC | | 25,101.24 | | | | 25,101.24 |
| The Center for Advanced Medicine, LLC | | 18,091.09 | | | | 18,091.09 |
| Revue Pharmacy | | 2,669.33 | | | | 2,669.33 |
| **Total Revenue** | - | 119,210.80 | - | - | - | 119,210.80 |
| **Expenses** | | | | | | |
| Wages | Prepetition | | | | | |
| Dalia Soria | (456.00) | (456.00) | (456.00) | (456.00) | (456.00) | (456.00) |
| Demarco McKenzie | (836.55) | (836.55) | (836.55) | (836.55) | (836.55) | (836.55) |
| Demarion Smith | (386.00) | (386.00) | (386.00) | (386.00) | (386.00) | (386.00) |
| Darius Brooks | (480.00) | (480.00) | (480.00) | (480.00) | (480.00) | (480.00) |
| Jennifer Yearwood | (420.00) | (420.00) | (420.00) | (420.00) | (420.00) | (420.00) |
| Keyona R Jones | (288.00) | (288.00) | (288.00) | (288.00) | (288.00) | (288.00) |
| Len Poplar | (290.00) | (290.00) | (290.00) | (290.00) | (290.00) | (290.00) |
| Rhonda McLendon | (366.00) | (366.00) | (366.00) | (366.00) | (366.00) | (366.00) |
| Employees | | | | | | |
| Janice Bouie | (953.50) | (1,906.66) | | (1,906.66) | | (1,906.66) |
| **Trash - Waste Management** | | (3,300.00) | | | | (3,300.00) |
| **Total Maintenance, Contract & Repairs** | | (1,400.00) | | | | (1,400.00) |
| **Total Utilities (Electric, Gas, Water, Sewer, Phone)** | | | | | | - |
|   Georgia Power | | (13,500.00) | | | | (13,500.00) |
|   Fulton County Water | | (3,000.00) | | | | (3,000.00) |
|   Telephone | | (750.00) | | | | (750.00) |
| Janitorial Supplies | | (1,000.00) | | | | (1,000.00) |
| Lawn, Landscape, Grounds, Irrigation | | | | | | - |
| Parking lot repair & maintenance | | | | | | - |
| Insurance Past Due & Paid Current $48,644.00 | | (4,433.00) | | | | (4,433.00) |
| Legal Fees | | | | | | - |
| CPA | | | | | | - |
| UST Distribution Fee | | | | | | - |
| **Total Expenses** | (4,476.05) | (32,812.21) | (3,522.55) | (5,429.21) | (3,522.55) | (32,812.21) |
| **Weekly Operating Cash Flow** | (4,476.05) | 86,398.59 | (3,522.55) | (5,429.21) | (3,522.55) | 86,398.59 |
| **Financing Cash Flow** | | | | | | |
| Capital One Loan Payments | | | | | | |
| Ground Lease Payments | | | (80,965.93) | | | |
| **Weekly Financing Cash Flow** | - | - | (80,965.93) | - | - | - |
| **Weekly Free Cash Flow** | **(4,476.05)** | **86,398.59** | **(84,488.48)** | **(5,429.21)** | **(3,522.55)** | **86,398.59** |
| End of Week / Month Cash | 6,405.71 | 92,804.30 | 8,315.83 | 2,886.62 | (635.93) | 85,762.66 |