**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In Re: | CASE NO.  22-57594-LRC |
| **3333 ALPHARETTA LIFEHOPE 10 ACRE LAND, LLC,** | CHAPTER 11 |
| Debtor. | |

**PLAN OF REORGANIZATION**
**PROPOSED BY 3333 ALPHARETTA LIFEHOPE 10 ACRE LAND, LLC**

**December 22, 2022**

**ROUNTREE LEITMAN KLEIN & GEER, LLC**

William A. Rountree, Ga. Bar No. 616503
Will Geer, Ga Bar No. 940493
Elizabeth A. Childers, Ga. Bar No. 143546
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
wrountree@rlkglaw.com
wgeer@rlkglaw.com
echilders@rlkglaw.com
*Counsel for the Debtors*

**NO MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND
RELATED MATERIALS APPROVED BY THE BANKRUPTCY COURT HAVE
BEEN AUTHORIZED FOR USE IN SOLICITING ACCEPTANCES OR
REJECTIONS OF THIS PLAN.**

# ARTICLE I.   INTRODUCTION

3333 Alpharetta Lifehope 10 Acre Land, LLC, the Debtor and Debtor-in-Possession (the "**Debtor**") in the above-captioned bankruptcy case, hereby proposes and files the following Plan of Reorganization providing for a reorganization of its debts. This Plan of Reorganization (the "**Plan**") should be considered in conjunction with the related Disclosure Statement.

# ARTICLE II.   DEFINITIONS AND RULES OF INTERPRETATION

**Section 2.01   Scope of Definitions and Rules of Interpretation**. For purposes of the Plan, all capitalized terms not otherwise defined herein shall have the meanings ascribed to them in this Article II of the Plan. Any term used in the Plan that is not defined herein but is otherwise defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. The rights and obligations arising under the Plan shall be interpreted, governed by, and construed and enforced in accordance with the laws of the State of Georgia (without regard to the conflict of law principles thereof), the Bankruptcy Code, and the Bankruptcy Rules, as appropriate.

**Section 2.02   *Administrative Claim*** shall mean an Allowed Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and entitled to priority payment pursuant to Section 507(a) of the Bankruptcy Code, including (a) the actual, necessary costs and expenses incurred after the Petition Date of preserving any of the Estate and operating the Debtor's business, including wages, salaries, or commissions for services rendered after the Petition Date, (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses approved, awarded or allowed under Sections 330(a) or 331 of the Bankruptcy Code, (c) the post-Effective Date costs and expenses of administering the Estate, (d) claims held by landlords related to the assumption of unexpired leases, and (e) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

**Section 2.03   *Administrative Claims Bar Date*** means the first Business Day that is at least 30 days after the Effective Date.

**Section 2.04   *Allowed Claim*** shall have the meaning set forth in Section 9.01 of this Plan.

**Section 2.05   *Assets*** shall mean all property of the Debtor and the Estate as defined in Section 541 of the Bankruptcy Code, including without limitation all right, title, and interest in and to any Avoidance Actions or other Causes of Action that the Debtor or the Estate may have as of the Effective Date or any time thereafter.

**Section 2.06   *Avoidance Actions*** shall mean any actions, causes of action, claims, demands, suits, or rights, created or arising in favor of the Debtor or its Estate under the Bankruptcy Code,

including all claims, rights and causes of action arising under Section 510 or under any of Sections 542 through 553 of the Bankruptcy Code, in each case regardless of whether such actions, causes of action, claims, demands, suits or rights are commenced prior to or after the Effective Date.

**Section 2.07** *Ballot* shall mean each of the voting forms that will be distributed by Order of the Bankruptcy Court to Holders of Claims in Classes that are impaired and entitled to vote under the Plan.

**Section 2.08** *Bankruptcy Case* shall mean the Chapter 11 bankruptcy case of the Debtor now pending before the Bankruptcy Court.

**Section 2.09** *Bankruptcy Code* shall mean the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended and applicable to this Bankruptcy Case.

**Section 2.10** *Bankruptcy Court* shall mean the United States Bankruptcy Court for the Northern District of Georgia or, in the event such Bankruptcy Court ceases to exercise jurisdiction over the Bankruptcy Case, such court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case in lieu of the United States Bankruptcy Court for the Northern District of Georgia.

**Section 2.11** *Bankruptcy Rules* shall mean: (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, (b) the Federal Rules of Civil Procedure, and (c) the Local Rules of the Bankruptcy Court, all as amended from time to time and as applicable to this Bankruptcy Case or proceedings therein.

**Section 2.12** *Bar Date* shall mean the last date set by the Bankruptcy Court to file proofs of claim asserting a pre-petition claim.

**Section 2.13** *Business Day* shall mean any day, excluding Saturdays, Sundays, and legal holidays, on which commercial banks are open for business in Atlanta, Georgia.

**Section 2.14** *Capital One* shall mean Capital One, National Association

**Section 2.15** *Capital One Secured Claim* shall mean the secured claim held by Capital One.

**Section 2.16** *Cash* shall mean legal tender of the United States of America, or a check entitling the holder to immediate payment thereof.

**Section 2.17** *Causes of Action* shall mean any and all of the Debtor's and the Estate's claims, causes of action, suits, proceedings, liabilities, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, torts, penalties, statutory violations, agreements, promises, variances, setoff or recoupment rights, trespasses, damages, or judgments,

whether asserted or unasserted, liquidated or unliquidated, based on any act or omission or other event occurring prior to the Effective Date, including Avoidance Actions and D&O Actions, and any claims acquired following the Petition Date, including without limitation any such Causes of Action described in the Disclosure Statement.

**Section 2.18**    *Claim* shall mean a claim against the Debtor or its Estate, as defined in Section 101(5) of the Bankruptcy Code.

**Section 2.19**    *Claiming Period* shall mean a period of the later of one year following the first Distribution to a Class of Claims or 180 days after a Distribution is made to a claimant on account of which Unclaimed Property first results.

**Section 2.20**    *Claims Litigation* shall mean any and all litigation or proceedings arising out of objections to Claims asserted against the Estate, or affirmative counterclaims or requests for setoff or recoupment that are raised with regard to Claims asserted against the Estate.

**Section 2.21**    *Claims Objection Deadline* shall mean the first Business Day that is at least 60 days after the Effective Date.

**Section 2.22**    *Class* shall mean any class into which Claims or Equity Interests are classified under this Plan.

**Section 2.23**    *Confirmation Date* shall mean the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

**Section 2.24**    *Confirmation Hearing* shall mean the hearing on confirmation of the Plan, held pursuant to Section 1128 of the Bankruptcy Code.

**Section 2.25**    *Confirmation Order* shall mean the Order entered by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

**Section 2.26**    *Debtor* shall mean 3333 Alpharetta Lifehope 10 Acre Land, LLC, prior to the Effective Date.

**Section 2.27**    *Deficiency Claim* shall mean the Allowed Claim of any secured creditor to the extent that such claim is not a Secured Claim, which shall be treated as a General Unsecured Claim.

**Section 2.28**    *Disallowed Claim* shall have the meaning set forth in Section 9.02 of this Plan.

**Section 2.29**    *Disbursing Agent* shall mean the Reorganized Debtor.

**Section 2.30**    *Disputed Claim* shall have the meaning set forth in Section 9.03 of this Plan.

**Section 2.31** *Distribution* shall mean a distribution or payment under the Plan to the Holders of Allowed Claims.

**Section 2.32** *Effective Date* shall mean the first Business Day occurring at least 60 days after the entry of the Confirmation Order, provided that the Confirmation Order has become a Final Order.

**Section 2.33** *Equity Interests* shall mean the equity shareholder interests in the Debtor held by David Robinson.

**Section 2.34** *Estate* shall mean the bankruptcy estate created by the commencement of the Bankruptcy Case, both prior to and following the Confirmation Date.

**Section 2.35** *Final Order* shall mean an order or judgment, the operation or effect of which has not been stayed, reversed, modified, or amended and as to which order or judgment the time to appeal, petition for certiorari, or seek re-argument, review or rehearing has expired and as to which no notice of appeal, petition for certiorari, or motion for re-argument, review or rehearing was timely filed or, if timely filed, the order or judgment has been affirmed by the highest court to which the order or judgment was appealed or from which the re-argument or rehearing was sought, or certiorari has been denied, and the time to file any further appeal or to petition for certiorari or to seek further re-argument or rehearing has expired.

**Section 2.36** *General Unsecured Claim* shall mean an Allowed Claim that is not an Administrative Claim, a Priority Claim, a Secured Claim, a Priority Tax Claim, or is not otherwise separately classified.

**Section 2.37** *Ground Lease* shall mean the Ground Lease dated August 31, 2017 between 3333 Old Milton Alpharetta LLC as landlord and the Debtor as tenant for the real property located at 3333 Old Milton Parkway, Alpharetta, Georgia.

*Section 2.38* *Ground Lessor* shall mean 3333 Old Milton Alpharetta LLC.

**Section 2.39** *Holder* means the person or entity with legal standing to assert rights based on a Claim or Equity Interest, as applicable.

**Section 2.40** *Honan Entities* means Honan Preferred Equity and Honan Property Management, listed as creditors on the Debtor's Amended Schedule F at Docket No. 52.

**Section 2.41** *Impaired* has the meaning ascribed to it in section 1124 of the Bankruptcy Code.

**Section 2.42** *Initial Distribution Date* shall mean the first business day which is at least 30 business days after the Effective Date.

**Section 2.43** *Insider* shall have the meaning set forth in Section 101(31) of the Bankruptcy Code.

**Section 2.44** *Petition Date* shall mean September 23, 2022, the date on which the Debtor filed its Chapter 11 petition, commencing this Bankruptcy Case.

**Section 2.45** *Phoenix* shall mean Phoenix Elevator Service Inc. of GA.

**Section 2.46** *Phoenix Secured Claim* shall mean the secured claim held by Phoenix.

**Section 2.47** *Plan* shall mean this Plan of Reorganization, as it may be modified or amended from time to time pursuant to Section 1127 of the Bankruptcy Code.

**Section 2.48** *Priority Claim* shall mean an Allowed Claim entitled to priority pursuant to Sections 507(a)(2) through and including 507(a)(10) of the Bankruptcy Code, but not including Administrative Claims, Professional Claims, or Priority Tax Claims.

**Section 2.49** *Priority Tax Claim* shall mean an Allowed Claim entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

**Section 2.50** *Professional Claim* shall mean any Claim based on professional fees held by any party retained pursuant to Sections 327–330 of the Bankruptcy Code.

**Section 2.51** *Property* shall mean the real property and improvements comprising an office building located at 3333 Old Milton Parkway, Alpharetta, Georgia.

**Section 2.52** *Purchaser* shall mean 3333 Physicians Center MOB 1 SPE, LLC, the purchaser under the Purchase and Sale Agreement attached to the Disclosure Statement as "Exhibit B."

**Section 2.53** *Record Date* means the date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of Holders of Allowed Claims entitled to Distributions under this Plan. If no Record Date is established in the Confirmation Order or any other Final Order of the Bankruptcy Court, then the Record Date shall be the Confirmation Date. The Record Date shall not be later than the Confirmation Date.

**Section 2.54** *Record Holder* means the Holder of a Claim as of the Record Date.

**Section 2.55** *Reorganized Debtor* shall mean 3333 Alpharetta Lifehope 10 Acre Land, LLC, on and after the Effective Date of the Plan.

**Section 2.56** *Sale* shall mean the sale of the Property pursuant to the Purchase and Sale Agreement attached to the Disclosure Statement as "Exhibit B."

**Section 2.57**  *Scheduled* shall mean, with respect to any Claim or Equity Interest, the status and amount, if any, of such Claim or Equity Interest, as set forth in the Debtor's Schedules, as amended.

**Section 2.58**  *Schedules* shall mean the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs, filed on or about October 18, 2022 [Doc. 34], amended on November 21, 2022 [Doc. 52], and as amended from time to time in this Bankruptcy Case.

**Section 2.59**  *Secured Claim* shall mean an Allowed Claim secured by a lien on property of the Estate to the extent of the value, as of the Confirmation Date, of such lien as determined by a Final Order of the Bankruptcy Court pursuant to Section 506 of the Bankruptcy Code, or as otherwise agreed in writing by the Debtor and the Holder of such Allowed Claim.

**Section 2.60**  *Subordinated General Unsecured Claim* means (i) any Claim, or portion thereof, which is subordinated to the payment of all other General Unsecured Claims (other than Claims which are themselves Subordinated General Unsecured Claims) pursuant to Section 510 of the Bankruptcy Code, any other applicable law, any order of the Bankruptcy Court or any applicable agreement, or (ii) any Claim for any fine, penalty, or forfeiture, or for multiple, exemplary or punitive damages, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the Holder of such Claim.

**Section 2.61**  *Unclaimed Property* means any funds payable to Holders of Claims which are unclaimed.

**Section 2.62**  *Unimpaired* means, with respect to a Class of Claims or Equity Interests, any Class that is not Impaired.

**Section 2.63**  *Unsecured Claim* means an Allowed Claim held by a Creditor of any of the Debtor, which is not secured by an interest in any of the property of the Debtor's Estate.

### ARTICLE III. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**Section 3.01  Introduction**.

(a)  All Claims and Equity Interests in the Bankruptcy Case are classified in the Classes below. Notwithstanding any other provision of the Plan, a Claim in a particular Class is entitled to receive Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class, and only to the extent such Claim has not been paid, released, or otherwise satisfied prior to the Effective Date.

(b)  Under the provisions of Section 1123(a)(1) of the Bankruptcy Code, Claims of a kind specified in Sections 507(a)(2), 507(a)(3), and 507(a)(8) of the Bankruptcy Code

(administrative expenses, "gap" claims, and tax claims) may not be designated by the Debtor as being in particular classes. Notwithstanding this prohibition of classification, these Claims are nevertheless treated in Article IV of this Plan.

**Section 3.02    Classification**. Claims and Equity Interests are classified as follows:

(a) **Class 1** – **Capital One Secured Claim.** Class 1 consists of the Capital One Secured Claim.

(b) **Class 2** – **Phoenix Secured Claim**. Class 2 consists of the Phoenix Secured Claim.

(c) **Class 3** - **General Unsecured Claims**. Class 3 consists of all General Unsecured Claims held by creditors of the Debtor, excluding claims held by the Honan Entities.

(d) **Class 4 - Equity Interests**. Class 4 consists of all Equity Interests in the Debtor held by 3333 Alpharetta Lifehope MOB 1 JV, LLC.

## ARTICLE IV. TREATMENT AND IMPAIRMENT
## OF CLAIMS AND EQUITY INTERESTS

The treatment and impairment of each of the classes of Claims and Equity Interests set forth in Article III and the treatment and impairment of Administrative Claims and Priority Claims are described as follows:

**Section 4.01    Administrative Claims**. Unless paid in the ordinary course of business, pursuant to an order of the Bankruptcy Court, or separately classified, and except as may otherwise be agreed between the Debtor and the Holder of an Administrative Claim, the Reorganized Debtor will pay all Administrative Claims that are Allowed Claims as of the Effective Date in Cash in full on the Effective Date or as soon thereafter as is reasonably practicable.  Subsequent to the Effective Date, the Reorganized Debtor will pay each Administrative Claim that becomes an Allowed Claim following the Effective Date in Cash in full as soon as reasonably practicable after the date the Claim becomes an Allowed Claim. Administrative Claims are Unimpaired and are presumed to accept the Plan.

**Section 4.02    Priority Tax Claims**.

(a) As to any Priority Tax Claim not paid in full on or before the Effective Date, the Holder of such Priority Tax Claim shall be paid on the Effective Date with 6% simple annual interest accruing on the unpaid amount of such claims until paid in full. The Debtor is not anticipating any Priority Tax Claims.

(b) Priority Tax Claims are Unimpaired and are presumed to accept the Plan.

**Section 4.03   Priority Claims**.

(a)   Except as may otherwise be agreed between the Reorganized Debtor and the Holder of a Priority Claim, the Reorganized Debtor will pay all Priority Claims that are allowed as of the Effective Date in Cash in full on the Effective Date or as soon thereafter as is reasonably practicable.

(b)   To the extent that any Priority Claim is allowed after the Effective Date, it will be paid in full in Cash within 30 days after the Claim is allowed or as soon thereafter as is reasonably practicable.

(c)   Priority Claims are Unimpaired and are presumed to accept the Plan.

**Section 4.04   Classes.**

(a)   **Class 1 – Capital One Secured Claim**.  Class 1 shall consist of the Allowed Secured Claim of Capital One. Capital One's filed proof of claim 4-1 in the amount of $31,085,028.82 shall be allowed as a secured claim in full and shall not be subject to any claims for setoff, defenses, or clawbacks. To secure its claim, Capital One asserts a first priority lien and security interest in substantially all of the Debtor's assets, including all of the Debtor's right, title, and interest in and to the Property, which includes all of the Debtor's rights under the Ground Lease (the "**Class 1 Collateral**"). Capital One shall retain its lien on the Class 1 Collateral and the lien shall be valid and fully enforceable to the same validity, extent and priority as existed on the Petition Date until the Class 1 Claim is paid in full.

The Debtor shall pay the current payoff under the loan documents as of the Effective Date of the Class 1 Claim in full on the Effective Date. Any payments made prior to the Effective Date and post-petition shall be applied to the principal balance of the Class 1 Claim.

Class 1 is Unimpaired and deemed to accept the plan. Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. The Debtor reserves the right to object to any and all claims.

(b)   **Class 2 – Phoenix Secured Claim**.  Class 2 shall consist of the Secured Claim of Phoenix, scheduled in the amount of $4,532.00. To secure its claim, Phoenix recorded a Materialman's and Mechanic's Claim of Lien at Lien Book 5445, Page 551, Fulton County, Georgia records. The pre-petition lien held Phoenix shall continue in full force and effect until such time as the Class 2 Claim is paid in full.

The Debtor shall pay the Class 2 Claim in full on the Effective Date, with interest at the federal judgement rate of interest accruing from the Petition Date through the date of distribution. Any payments made prior to the Effective Date and post-petition shall be applied to the principal balance of the Class 2 Claim.

Class 2 is Unimpaired and deemed to accept the plan. Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. The Debtor reserves the right to object to any and all claims.

(c)    **Class 3 - General Unsecured Claims**.  Class 3 shall consist of all General Unsecured Claims, excluding claims held by the Honan Entities, including any potential deficiency claims pursuant to 11 U.S.C. §§ 506 and 522(f).

The Debtor shall pay the Class 3 Claims in full within on the Effective Date, with interest at the federal judgement rate of interest accruing from the Petition Date through the date of distribution. Any Class 3 Claim shall be reduced by any payment received by the creditor holding such claim from any third party or other obligor and the Debtor's obligations hereunder shall be reduced accordingly.

Class 3 is Unimpaired and deemed to accept the Plan. Nothing herein shall constitute an admission as to the nature, validity, or amount of any such claims. The Debtor reserves the right to object to any and all claims.

(d)    **Class 4 – Equity Interests**. The Holders of equity interests in Class 4 shall be treated as follows: The Reorganized Debtor shall not make any distributions or pay any dividends related to any Equity Interests unless and until all distributions related to all Allowed Claims in Classes 1-3 have been made in full as set forth herein.

Holders of Equity Interests in the Debtor will retain those interests.

Class 4 is Unimpaired and deemed to accept the Plan.

## ARTICLE V.  MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

**Section 5.01   Parties Responsible for Implementation of the Plan**. After the Effective Date, the Reorganized Debtor will be responsible for implementing the Plan. The Reorganized Debtor will be authorized and empowered to take such actions as are required to effectuate the Plan, including the prosecution and enforcement of Causes of Action. The Reorganized Debtor will also file the necessary final reports and will apply for a final decree as soon as practical after substantial consummation and the completion of the claims analysis and objection process.

**Section 5.02   Identity of Principals of the Reorganized Debtor**. As of the Effective Date, 3333 Alpharetta Lifehope MOB 1 JV, LLC will be the sole member of the Reorganized Debtor (the "**Sole Member**"). 3333 Alpharetta Lifehope HPE, LLC is the manager of the Sole Member (the "**Sole Member's Manager**"). Scott Honan is the manager of the Sole Member's Manager. Mr. Honan will manage the Reorganized Debtor. He may add members and officers to the Reorganized Debtor as he deems appropriate, but he shall remain as the manager of the Reorganized Debtor until such time that all distributions hereunder have been made.

**Section 5.03    Funding of Plan**. The Distributions contemplated by this Plan shall be made through the Sale of the Property.

**Section 5.04    Disbursing Agent**. The Reorganized Debtor is authorized to make Distributions pursuant to this Plan and maintain bank accounts in the ordinary course of business or to designate any person or entity to do so on its behalf. The Reorganized Debtor may also pay the ordinary and necessary expenses of administration related to implementation of the Plan in due course.

**Section 5.05    Retained Actions**. On the Effective Date, pursuant to Section 1123(b) of the Bankruptcy Code, except as otherwise provided in the Plan, all Causes of Action (including Avoidance Actions) that the Debtor or the Estate had or had power to assert immediately prior to the Confirmation Date, shall become property of the Reorganized Debtor.

**Section 5.06    Settlement of Claims**. The Reorganized Debtor shall be authorized to resolve objections to Claims and enter into settlements and stipulations regarding the amount of Allowed Claims without notice or further order of the Bankruptcy Court.

**Section 5.07    Exclusive Right to Modify Plan**. The Debtor shall retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to, or modifications of, the Plan until and including the Confirmation Date.

**Section 5.08    Effectuating Documents; Further Transactions**. The Debtor shall be authorized to execute, deliver, file, and/or record such contracts, instruments, releases, indentures, and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**Section 5.09    Further Authorization**. The Debtor and the Reorganized Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings as it deems necessary or desirable to carry out the intentions and purposes and to give full effect to the provisions of this Plan.

**Section 5.10    Retention and Payment of Professionals by the Reorganized Debtor**. Upon the Effective Date, any requirement that professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay professionals in the ordinary course of business for purposes of implementing the Plan or for such other purposes it sees fit in its sole discretion. Compensation and reimbursement of expenses earned and incurred by professionals performing services for the Reorganized Debtor, as well as Professional Claims arising after confirmation, shall be paid by the Reorganized Debtor monthly after rendition of bills to the Reorganized Debtor, and no further applications for compensation, reimbursements of expenses, or payment of administrative expenses shall be necessary or required unless a dispute arises in

regard thereto; in the event of any such dispute, the same shall be resolved by the Bankruptcy Court after notice and hearing.

**Section 5.11   U.S. Trustee Fees and Reporting**. The Debtor and the Reorganized Debtor, as appropriate, shall cause to be paid any and all fees of the Office of the United States Trustee as and when such fees become due, until this Bankruptcy Case is closed and a final decree is entered. In addition, the Reorganized Debtor will file all post-confirmation reports required by the United States Trustee's Office. Any outstanding fees owed to the U.S. Trustee as of the Effective Date shall be paid in full on the Effective Date.

## ARTICLE VI.  ACCEPTANCE OR REJECTION OF THE PLAN

**Section 6.01   Classes Entitled to Vote**. Each Impaired Class of Claims shall be entitled to vote to accept or reject the Plan. Each Unimpaired Class of Claims shall be deemed to have accepted the Plan and shall not be entitled to vote to accept or reject the Plan.

**Section 6.02   Claim Designations**. The Plan Proponent reserves the right to seek to designate, pursuant to Section 1126(e) of the Bankruptcy Code, any vote cast by a Holder of a Claim whose vote on the Plan was submitted for an improper purpose or not in good faith.

## ARTICLE VII.  PROVISIONS REGARDING DISTRIBUTIONS

**Section 7.01   Date of Distributions to Creditors**. Payments to Holders of Allowed Claims shall be paid as provided in Article IV of this Plan.

**Section 7.02   Distributions Only on Allowed Claims**. A Claim is in a particular Class and entitled to receive Distributions only to the extent it is an Allowed Claim, and only if and when such Claim becomes an Allowed Claim. A Claim that is ultimately a Disallowed Claim, or otherwise not entitled to any Distribution by settlement, compromise, untimely filing, or other order of the Bankruptcy Court shall not participate in the Distributions to be made under the Plan

**Section 7.03   Distributions to Holders as of the Record Date**. All Distributions on account of Allowed Claims shall be made to the Record Holders of such Claims. As of the close of business on the Record Date, the claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Record Holder of any Claim. The Disbursing Agent shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. The Disbursing Agent shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

**Section 7.04   Delivery of Distributions**. All Distributions to a Holder of an Allowed Claim shall be made by the Disbursing Agent (a) to the address set forth on the proof of claim filed by such Holder, (b) to the address set forth in any written notices of address change delivered to the

Debtor's undersigned counsel after the date of filing of any related proof of claim, (c) to the address reflected in the Schedules if no proof of claim has been filed and Debtor has not received a written notice of change of address, or (d) if the Holder's address is not listed in the Schedules and no proof of claim has been filed, at the last known address of such Holder according to the Debtor's books and records.

**Section 7.05    Creditors' Duty to Provide Address Updates**.  It shall be the responsibility of each Holder to maintain a current address with the Disbursing Agent by informing the Debtor's undersigned counsel in writing of any address change. Providing such updated address information following any change of address shall be a condition precedent to receiving any Distributions under this Plan.

**Section 7.06    Interest on Claims**. Except as provided in a Final Order entered in the Bankruptcy Case, (a) no Holder of any Claim, other than the Holders of Priority Tax Claims and Allowed Secured Claims, shall be entitled to interest accruing on or after the Petition Date on such Claim, and (b) interest shall not accrue or be paid upon any Disputed Claim with respect to the period from the Petition Date to the date a Distribution is made thereon if and after such Disputed Claim, or any part thereof, becomes an Allowed Claim.

**Section 7.07    Method of Payment**. All payments made pursuant to this Plan shall be in Cash or by any means reasonably selected by the Reorganized Debtor, including check, ACH, or wire transfer.

**Section 7.08    Prepayment**. Unless the Plan or the Confirmation Order provides otherwise, the Reorganized Debtor shall have the authority to prepay, without penalty, all or any portion of an Allowed Claim at any time.

**Section 7.09    Setoffs**. The Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to the Plan on account of such Claim, claims of any nature whatsoever that the Debtor, the Estate, or the Reorganized Debtor may have against such Holder of a Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, the Estate, or the Reorganized Debtor of any such claim that Debtor may have against such Holder of a Claim.

**Section 7.10    Unclaimed Property**.

(a)  Unclaimed Property shall include (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address, (b) funds for checks which have not been presented and paid within 90 days of their issuance, (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address to mail or deliver such property and (d) checks (and the funds

represented thereby) which are not mailed due to the lack of required tax identification information, but only following two mailed requests for this tax identification information.

(b) During the Claiming Period, Unclaimed Property shall be held solely for the benefit of the Holders of Allowed Claims which have failed to claim such property. During the Claiming Period, Unclaimed Property due the Holder of an Allowed Claim shall be released and delivered to such Holder upon presentation of proper proof by such Holder of its entitlement thereto.

(c) In the event that there is Unclaimed Property with regard to any Claim, the Debtor shall, until such Unclaimed Property is claimed or the Claiming Period with regard to the Holder of such Claim has expired, retain all subsequent Distributions due with regard to such Claim.

(d) After the Claiming Period with regard to such Holder has expired, no subsequent Distributions shall be made on account of such Claim, and such Claim shall be treated as being disallowed, waived, and satisfied; provided, however, that the Claiming Period may be extended for the Holder of any Allowed Claim by agreement between the Claim Holder and the Debtor. At the end of the Claiming Period, the Holder of an Allowed Claim theretofore entitled to Unclaimed Property shall cease to be entitled thereto and the Unclaimed Property shall become the property of the Reorganized Debtor pursuant to section 347(b) of the Bankruptcy Code.

(e) All parties entitled to participate in Distributions under this Plan shall be required to notify the Reorganized Debtor in writing of any change in the address to which Distributions are to be sent.

(f) These provisions shall apply without regard to any applicable non-bankruptcy laws with respect to unclaimed property.

**Section 7.11   Rounding**. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment made by the Reorganized Debtor may reflect a rounding of such fraction down to the nearest whole cent.

**Section 7.12   De Minimis Payments**. The Reorganized Debtor will not issue payments under this Plan on account of any Claim for which the Distribution would equal $20.00 or less.

## ARTICLE VIII. TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

**Section 8.01    Assumption**. Any executory contracts and unexpired leases that have not been previously assumed or rejected shall be deemed assumed and assigned to the Purchaser on the date of closing of the Sale. Specifically, the Ground Lease with the Ground Lessor will be assumed and assigned to the Purchaser on the date of closing of the Sale.

**Section 8.02    Cure of Defaults**. All cure payments which are required by Section 365(b)(1) of the Bankruptcy Code, including the September 2022 ground lease payment and any other cure costs owed to the Ground Lessor, shall be made at the time of the closing of the Sale. In the event of a dispute regarding the amount of any cure payment, the ability of the Reorganized Debtor to provide adequate assurance of future performance or any other matter pertaining to assumption or assignment, the Reorganized Debtor shall make such cure payments required by Section 365(b)(1) of the Bankruptcy Code following the entry of a Final Order resolving such dispute.

**Section 8.03    Claims for Damages**. Each person who is a party to an executory contract or unexpired lease rejected by the Debtor during the pendency of this Bankruptcy Case but prior to confirmation of this Plan must file its claim for damages, including requests for payment of Administrative Claims, by the applicable deadline(s) as previously established or to be established by the Bankruptcy Court, as appropriate.

**Section 8.04    Classification of Claims**. Allowed Claims arising out of the rejection of executory contracts and unexpired leases shall be Class 3 General Unsecured Claims.

## ARTICLE IX.  ALLOWANCE OF CLAIMS

**Section 9.01    Allowed Claims**. An "Allowed" Claim for purposes of the Plan means any one of the following:

(a)    If no objection is filed by the Debtor or Reorganized Debtor to a proof of claim on or before the Claims Objection Deadline (as extended, if applicable), such Claim shall be deemed an Allowed Claim, of the type and in the amount set forth in such request or proof of claim; or

(b)    If the Debtor or Reorganized Debtor files an objection to such request or proof of claim, then such Claim shall be an Allowed Claim of the type and to the extent provided in (i) a subsequent Final Order of the Bankruptcy Court or (ii) a stipulation agreed upon by the Debtor, and shall thereafter be treated in accordance with the provisions of such order or stipulation and the Plan.

**Section 9.02  Disallowed Claims**.  A Disallowed Claim is a Claim or any portion thereof that: (i) is not an Allowed Claim or a Disputed Claim, (ii) has been disallowed by a Final Order of the Bankruptcy Court; (iii) is listed in any of Debtor's Schedules at $0.00, unknown, contingent, disputed, or unliquidated and as to which no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court; or (iv) is not listed in Debtor's Schedules and as to which a proof of claim bar date has been established but no proof of claim timely filed or deemed timely filed with the Bankruptcy Court.

**Section 9.03  Disputed Claims**. A Disputed Claim is a Claim or any portion thereof that is not an Allowed Claim or a Disallowed Claim, and which is the subject of an objection timely filed with the Bankruptcy Court and which objection has not been withdrawn, settled, or overruled by a Final Order of the Bankruptcy Court.

**Section 9.04  Scheduled Claims**. With respect to any claims against Debtor that are listed in Debtor's Schedules, and the Holder of such Claim has not filed a proof of claim, the following shall apply:

    (a) If such claim is not shown in the Debtor's Schedules as disputed, unliquidated, or contingent, and if Debtor has not filed an objection to said claim, then such claim shall be deemed an Allowed Claim, of the type and in the amount shown on such Schedules;

    (b) If such claim is shown in the Debtor's Schedules as disputed, contingent, and/or unliquidated, then such claim shall be a Disallowed Claim and disallowed in its entirety; or

    (c) If such claim is not shown in the Debtor's Schedules as disputed, unliquidated, or contingent, but Debtor has timely filed an objection to such claim, the claim shall be a Disputed Claim until such time that it becomes an Allowed Claim and/or a Disallowed Claim.

**Section 9.05  Claims Objection Deadline**. All objections to Claims must be filed no later than the Claims Objection Deadline, subject to any extension granted by further order of the Bankruptcy Court.

**Section 9.06  Claims Allowed After the Effective Date**. To the extent that any Claim becomes an Allowed Claim after the Effective Date, its Holder will be paid its Distribution in Cash within 30 days after the Claim is allowed or as soon thereafter as is reasonably practicable.

**Section 9.07  Resolution of Claims Objections**. On and after the Effective Date, the Debtor shall have the authority to compromise, settle, or withdraw any objections to Claims, or otherwise resolve any Disputed Claims, without further approval of the Bankruptcy Court.

**Section 9.08  Adjustment of Claims and Treatment**. The Debtor and the Reorganized Debtor shall be authorized, empowered, and permitted subsequent to the Confirmation Date to enter into an agreement or agreements with any creditor providing for payment or treatment of such creditor's Claim upon terms other than those provided in this Plan without further order of the Bankruptcy Court; provided, however, that no such agreement or agreements shall provide for

payment or treatment of such creditor's Claim upon terms more favorable to such creditor than the payment or treatment provided for such creditor in this Plan.

**Section 9.09    Administrative Claims Bar Date**. To the extent that any party asserts an Administrative Claim that has not been paid in full by the Effective Date, such party shall file a motion for allowance and payment of such Claim no later than the Administrative Claims Bar Date. Failure of any party to file such a motion prior to the Administrative Claims Bar Date shall entitle the Debtor to presume that no such Claim exists and will result in any such Claim being discharged, unless the Bankruptcy Court orders otherwise after notice and a hearing. The Administrative Claims Bar Date shall not apply to Professional Claims.

**Section 9.10    Professional Claims Bar Date**. Any Person seeking an award by the Bankruptcy Court of professional compensation for Professional Claims incurred prior to the Effective Date shall file a final application with the Bankruptcy Court for allowance of professional compensation for services rendered and reimbursement of expenses incurred through the Effective Date within 60 days after the Effective Date or by such other deadline as may be fixed by the Bankruptcy Court.

**Section 9.11    No Interest on Claims**. Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a post-petition agreement in writing between the Debtor and a Holder, post-petition interest shall not accrue or be paid on any Claims, including any Disputed Claim that later becomes an Allowed Claim, and no Holder shall be entitled to any interest accruing on or after the Petition Date with respect to any Claim except as specifically provided in this Plan.

**Section 9.12    No Admissions; Objection to Claims**. Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity designated as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan. The failure of the Debtor to object to or examine any Claim for purposes of voting on the Plan shall not be deemed a waiver of Debtor's rights to object to or reexamine such Claim in whole or in part.

**Section 9.13    No Distributions Pending Allowance**. Except as otherwise provided in the Plan, no Distributions will be made on account of any Claim or portion thereof that is a Disputed Claim unless and until such Claim becomes an Allowed Claim.

## ARTICLE X.  CONDITIONS PRECEDENT

**Section 10.01 Conditions to Confirmation**. The following are conditions precedent to confirmation of this Plan that may be satisfied or waived in accordance with section 10.03 of this Plan:

(a) The Bankruptcy Court shall have approved the Disclosure Statement with respect to this Plan in form and substance that is acceptable to the Debtor in its sole and absolute discretion; and

(b)   The Confirmation Order shall have been signed by the Bankruptcy Court and entered on the docket of the Bankruptcy Case.

**Section 10.02  Conditions to the Effective Date**. The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with section 10.03 of this Plan:

(a)   The Confirmation Order shall not have been vacated, reversed, or modified and, as of the Effective Date, shall not be stayed; and

(b)   All documents and agreements to be executed on the Effective Date or otherwise necessary to implement the Plan shall be in form and substance that is acceptable to the Debtor in its reasonable discretion.

**Section 10.03  Waiver of Conditions to Confirmation or Effectiveness**. The conditions set forth in section 10.01 and section 10.02 of this Plan may be waived, in whole or in part, by the Debtor without any notice to any other parties-in-interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Confirmation Date or Effective Date may be asserted by the Debtor in its sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor). The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## ARTICLE XI.  EFFECT OF PLAN CONFIRMATION

**Section 11.01  Binding Effect**. On and after the Effective Date, and following confirmation by the Bankruptcy Court, the Plan shall be legally binding upon and inure to the benefit of the Debtor, the Estate, the Holders of Claims, the Holders of Equity Interests, and their respective successors and assigns, even if they voted to reject the Plan.

**Section 11.02  Vesting of Property in Reorganized Debtor**. Pursuant to 11 U.S.C. § 1141(b), confirmation of this Plan vests all remaining property of the Estate with the Reorganized Debtor as of the Effective Date. Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estate (excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall vest in Reorganized Debtor as of the Effective Date, free and clear of all Claims, liens, charges, encumbrances, rights and interests of creditors, except as specifically provided in the Plan.

**Section 11.03  Reorganized Debtor's Right to Operate Unsupervised**.  As of the Effective Date, the Reorganized Debtor may manage its operations and use, acquire, and dispose of property and settle and compromise Claims without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

**Section 11.04 Discharge**. Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan or in the Confirmation Order, the Distributions and rights that are provided in this Plan to Holders of Allowed Claims shall be in complete satisfaction, discharge, and release of all Claims, whether known or unknown, against the Debtor, the Estate, or the Reorganized Debtor. The Reorganized Debtor will not have any liabilities related to any Claims except those expressly assumed under this Plan.

**Section 11.05 Injunction**. Upon entry of a Confirmation Order in this case, the Confirmation Order shall act as a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim provided for under this Plan against the Debtor or the Reorganized Debtor or against any property of the Debtor or Reorganized Debtor or any property otherwise pledged as collateral against such Claim provided for under this Plan, except as provided for in this Plan.

**Section 11.06 Exemption from Certain Transfer Taxes and Recording Fees**. Pursuant to section 1146 of the Bankruptcy Code, any transfer from the Debtor or the Reorganized Debtor to any other Person or entity pursuant to or in contemplation of this Plan, or any agreement regarding the transfer of title to or ownership of any of the real or personal property held by the Debtor or Reorganized Debtor will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment.

## ARTICLE XII.  GENERAL PROVISIONS

**Section 12.01 Headings**. The headings of the articles, sections and subsections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

**Section 12.02 Notices**. Any notice required or permitted to be provided to the Reorganized Debtor under the Plan shall be in writing and served by overnight courier service or by certified mail, return receipt requested, addressed as follows:

To Reorganized Debtor:
3333 ALPHARETTA LIFEHOPE 10 ACRE LAND, LLC
c/o Scott Honan
11680 Great Oaks Way
Suite 120
Alpharetta, GA 30022

with a copy to:

William A. Rountree

Rountree Leitman Klein & Geer, LLC

2987 Clairmont Road

Suite 350

Atlanta, GA 30329

Should either the Reorganized Debtor or its counsel's address change, the applicable party shall notify in writing creditors then receiving payments under the Plan.

**Section 12.03 Amendments and Modifications**. This Plan may be altered, amended, or modified by the Debtor at any time, subject, however, to Section 1127 of the Bankruptcy Code. This Plan may not be altered, amended, or modified without the written consent of the Debtor. The Debtor may withdraw this Plan at any time.

**Section 12.04 Revocation of Plan**. The Debtor reserves the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to the entry of the Confirmation Order, and upon such revocation and/or withdrawal, this Plan shall be deemed null and void and of no force and effect.

**Section 12.05 Conflicts with Disclosure Statement**. In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

**Section 12.06 Retention of Property of the Estate**. Except to the extent disposed of in accordance with the provisions of this Plan, the Reorganized Debtor shall retain all of the property of the Estate within the meaning of Section 541 of the Bankruptcy Code.

**Section 12.07 Severability**. If any section or provision of this Plan is found to be contrary to law or unenforceable, then at the option of the Reorganized Debtor, such section or provision shall be deemed no longer a part of this Plan.

**Section 12.08 Continuation of all Retiree Benefits**. To the extent applicable to the Reorganized Debtor, all retiree benefits, as that term is defined in Section 1114 of the Bankruptcy Code, shall be continued in accordance with Section 1129(a)(13) of the Bankruptcy Code.

**Section 12.09 Tax Consequences**. Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and Holders of Equity Interests, or within each Class. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes. Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to

their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, no specific tax consequences to any Creditor or Holders of an Equity Interest are represented, implied, or warranted. The Plan Proponent assumes no responsibility for the tax effect that consummation of the Plan will have on any given Holder of a Claim or Equity Interest. Holders of Claims or Equity Interests are strongly urged to consult their own tax advisors covering the federal, state, local, and/or foreign tax consequences of the Plan to their individual situation.

**Section 12.10 Applicable Law**. Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

**Section 12.11 Retention of Jurisdiction by the Bankruptcy Court**. Until this Bankruptcy Case is closed and a final decree issued, the Bankruptcy Court shall retain jurisdiction over all matters arising out of or relating to this Bankruptcy Case, including, but not limited to, the following matters:

(a) To determine the allowance or classification of Claims or Equity Interests under this Plan and to determine any objections thereto;

(b) To construe and to take any action to enforce this Plan and to issue such orders as may be necessary for the implementation, execution, and consummation of this Plan;

(c) To determine all applications for allowance of compensation or reimbursement of expenses;

(d) To determine any other request for payment of Administrative Claims;

(e) To resolve any dispute regarding the implementation or interpretation of this Plan;

(f) To determine any and all motions pending as of the Confirmation Date for the rejection, assumption or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting therefrom;

(g) To determine all applications, motions, adversary proceedings, contested matters and other litigated matters that may be pending in the Bankruptcy Court on or initiated after the Effective Date;

(h) To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(i) To modify the Plan pursuant to Section 1127 of the Bankruptcy Code, or to remedy any apparent nonmaterial defect or omission in this Plan, or to reconcile any nonmaterial inconsistency in this Plan so as to carry out its intent and purpose;

(j)   To enter an order or final decree closing this Bankruptcy Case;

(k)   To determine matters under Section 505 of the Bankruptcy Code relating to any tax for which the Reorganized Debtor may be liable;

(l)   To consider and act on the compromise and settlement of any claim against the Debtor or Debtor-in-Possession or its Estate;

(m)   To determine all questions and disputes regarding title to the assets of the Debtor, Debtor-in-Possession, the Estate, or the Reorganized Debtor; and

(n)   To construe, enforce and resolve all questions and disputes relating to employment agreements existing or approved by the Bankruptcy Court at or prior to Confirmation.

**Section 12.12 Final Decree**. The Bankruptcy Court may, upon application of the Reorganized Debtor, at any time after "substantial consummation" of the Plan as defined in section 1101(2) of the Bankruptcy Code, enter a final decree in the Bankruptcy Case, notwithstanding the fact that additional funds may eventually be distributed to parties-in-interest. In such event, the Bankruptcy Court may enter an order closing this Bankruptcy Case pursuant to section 350 of the Bankruptcy Code; provided, however, that (a) the Reorganized Debtor shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may, from time to time, reopen the Bankruptcy Case if appropriate for any of the following purposes: (i) administering Assets; (ii) entertaining any adversary proceedings, contested matters; or applications the Debtor has brought or will bring with regard to the liquidation of Assets and the prosecution of Causes of Action; (iii) enforcing or interpreting this Plan or supervising its implementation; or (iv) for other cause. The Reorganized Debtor shall be authorized to reopen the Bankruptcy Case for purposes of obtaining a discharge after entry of the final decree and the fee associated with the attendant motion to reopen the Bankruptcy Case shall be waived, and the Reorganized Debtor shall not be responsible for payment of such to the clerk of the Bankruptcy Court.

*[Signature of counsel on following page]*

Dated: December 22, 2022                    ROUNTREE LEITMAN KLEIN & GEER, LLC

                                            */s/ Elizabeth A. Childers*
                                            William A. Rountree, Ga, Bar No. 616503
                                            Will Geer, Ga Bar No. 940493
                                            Elizabeth A. Childers, Ga. Bar No. 143546
                                            Century Plaza I
                                            2987 Clairmont Road, Suite 350
                                            Atlanta, Georgia 30329
                                            (404) 584-1238 Telephone
                                            wrountree@rlkglaw.com
                                            wgeer@rlkglaw.com
                                            echilders@rlkglaw.com
                                            *Attorneys for the Debtor*