**IT IS ORDERED as set forth below:**



**Date: February 22, 2023**

_____
**Lisa Ritchey Craig**
**U.S. Bankruptcy Court Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 3333 ALPHARETTA LIFEHOPE 10 ACRE LAND, LLC, | ) ) | Case No. 22-57594-LRC |
| | ) | |
| Debtor. | ) ) | |
| 3333 ALPHARETTA LIFEHOPE 10 ACRE LAND, LLC, | ) ) | Contested Matter |
| | ) | |
| Movant, | ) ) | |
| v. | ) ) | |
| CAPITAL ONE, N.A., | ) ) | |
| | ) | |
| Respondent | ) | |

**SIXTH INTERIM ORDER AUTHORIZING DEBTOR'S
LIMITED USE OF CASH COLLATERAL AND GRANTING
<u>ADEQUATE PROTECTION AND RELATED RELIEF</u>**

QB\78448866.4

This matter came before the Court on February 22, 2023 for a continued hearing (the "Fifth Continued Hearing") on the *Emergency Motion For Entry Of An Interim Order Authorizing Use Of Cash Collateral* [Docket No. 4] (the "Emergency Motion") filed by 3333 Alpharetta Lifehope 10 acre Land, LLC (the "Debtor"). Through the Emergency Motion, the Debtor requested that the Court enter an interim order authorizing the Debtor's limited use of Cash Collateral pending a final hearing on the Emergency Motion.

Capital One, National Association ("Capital One"), as agent and lender under the Loan Agreement (defined below), initially filed its *Limited Objection To Debtor's Emergency Motion For Entry Of An Interim Order Authorizing Use Of Cash Collateral* [Docket No. 13] (the "Limited Objection") with respect to the Emergency Motion.

The Court held a preliminary hearing on the Emergency Motion on September 28, 2022 (the "Preliminary Hearing"). Following this hearing, the Court entered its *Interim Order Authorizing Debtor's Limited Use Of Cash Collateral And Granting Adequate Protection* [Docket No. 17] (the "First Interim Order"). The First Interim Order authorized the Debtor's limited use of Cash Collateral under the terms stated therein pending a final hearing scheduled for October 27, 2022.

On October 24, 2022, Capital One filed its *Objection To Final Approval Of Debtor's Emergency Motion For Authorization To Use Cash Collateral* [Docket No. 43] (the "Second Objection"), thereby objecting to final approval of the Emergency Motion. Following the hearing on October 27, 2022 (the "First Continued Hearing"), the Court entered its *Second Interim Order Authorizing Debtor's Limited Use Of Cash Collateral And Granting Adequate Protection* [Docket No. 48] (the "Second Interim Order"). The Second Interim Order authorized the Debtor's limited use of Cash Collateral under the terms stated therein pending a hearing scheduled for November 17, 2022 (the "Second Continued Hearing").

2

On November 16, 2022, Capital One filed its *Supplement To Capital One's Objection To Final Approval Of Debtor's Emergency Motion For Authorization To Use Cash Collateral* [Docket No. 51] (the "Supplement").

Following the Second Continued Hearing (and based on an agreement of the Debtor and Capital One stated at that hearing), the Court entered its *Third Interim Order Authorizing Debtor's Limited Use Of Cash Collateral And Granting Adequate Protection* [Docket No. 59] (the "Third Interim Order"). The Third Interim Order authorized the Debtor's limited use of Cash Collateral under the terms stated therein pending a hearing scheduled for December 7, 2022 (the "Third Continued Hearing").

Following the Third Continued Hearing (and based on an agreement of the Debtor and Capital One stated at that hearing), the Court entered its *Fourth Interim Order Authorizing Debtor's Limited Use Of Cash Collateral And Granting Adequate Protection, Including Grant Of Conditional Conversion Of Bankruptcy Case And Related Relief* [Docket No. 66] (the "Fourth Interim Order"). The Fourth Interim Order authorized the Debtor's limited use of Cash Collateral under the terms stated therein pending the Fourth Continued Hearing scheduled for January 26, 2023 (the "Fourth Continued Hearing").

Following the Fourth Continued Hearing (and based on an agreement of the Debtor and Capital One stated at that hearing), the Court entered its *Fifth Interim Order Authorizing Debtor's Limited Use Of Cash Collateral And Granting Adequate Protection* [Dkt. 97] (the "Fifth Interim Order"). The Fifth Interim Order authorized the Debtor's limited use of Cash Collateral under the terms stated therein pending the Fifth Continued Hearing scheduled for February 22, 2023 (the "Fifth Continued Hearing").

At the Fifth Continued Hearing, the Debtor and Capital One stated that they have agreed to the entry of this Sixth Interim Order authorizing the Debtor's limited use of Cash Collateral under the terms stated herein for a further interim period pending a hearing on the Emergency Motion which will be held on March 17, 2023.

Having reviewed and considered the Emergency Motion, the Limited Objection, the Second Objection, the Supplement, the representations and argument of counsel at the previous hearings and the Fifth Continued Hearing, and the entire record before the Court, and good and sufficient cause appearing therefor,

**IT IS HEREBY FURTHER FOUND AND CONCLUDED** that:

A.  On September 23, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief with this Court commencing the above-captioned Chapter 11 case (the "Bankruptcy Case").  Pursuant to Bankruptcy Code §§ 1107 and 1108, the Debtor is continuing in possession of its assets and has continued in the operation and management of its business as debtor-in-possession.

B.  This Court has jurisdiction over the Emergency Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  The Emergency Motion presents a core proceeding as defined in 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

C.  Under the circumstances, proper and sufficient notice of the Emergency Motion, the Fifth Continued Hearing, and the relief granted in this Sixth Interim Order has been given by the Debtor.

D.  The Debtor is the owner of certain interests in real property and improvements comprising an office building located at 3333 Old Milton Parkway, Alpharetta, Fulton County, Georgia (the "Property").

E.  The Debtor is not the owner of the real property underlying the office building.  Rather, the Debtor is the ground lessee of the Property pursuant to a Ground Lease Agreement dated as of August 31, 2017 (as amended from time to time, the "Ground Lease") between 3333 Old Milton Alpharetta LLC (the "Ground Lessor"), as landlord, and the Debtor, as tenant.

F.  Pursuant to a Loan Agreement dated as of August 30, 2019 (as thereafter amended, the "Loan Agreement") entered by the Debtor, as borrower, and Capital One, as administrative agent, collateral agent, and a lender, Capital One provided a non-revolving

4

loan facility in the maximum principal amount of $32,000,000 to Borrower (the "Loan"). (The Loan Agreement, as amended prior to the Petition Date, together with all collateral and ancillary documents executed in connection therewith are referred to herein as the "Loan Documents", and the principal, interest, fees, expenses and other amounts owing by the Debtor under the Loan Documents are referred to herein as the "Indebtedness").

G.  Capital One asserts that (i) as of the Petition Date, the Indebtedness owing from the Debtor to Capital One under the Loan Agreement and the other Loan Documents totals at least $31,085,028.82, as more particularly described in the Proof of Claim filed by Capital One in the Bankruptcy Case [Claim 4-1]; and (ii) in addition, accrued and accruing interest (including default interest), costs, fees (including attorney's fees) and other amounts chargeable to the Debtor under the Loan Agreement and other Loan Documents are fully due and owing by the Debtor.

H.  Capital One asserts that, as security for repayment of the Indebtedness, Capital One holds valid, perfected, and enforceable liens and security interests in substantially all assets of the Debtor as described in the Loan Documents (collectively, the "Capital One Collateral"), including, among other things, all funds held by or for the Debtor as of the Petition Date and all rents collected from tenants of the Property.

I.  The Capital One Collateral includes cash proceeds and other cash equivalents that are "cash collateral" as defined in Bankruptcy Code § 363(a). The Capital One Collateral that is cash collateral will be referred to herein as the "Cash Collateral."

J.  Capital One has not consented to any subsequent use of its Cash Collateral by the Debtor except only under the express terms and conditions stated in this Sixth Interim Order.

K.  On December 22, 2022, the Debtor filed its proposed Chapter 11 plan of reorganization [Dkt. 75] (the "Plan"), and related disclosure statement [Dkt. 76] (the "Disclosure Statement"). A hearing on the Debtor's Disclosure Statement was held on February 16, 2023. After the hearing, the Court entered its *Order (I) Approving Debtor's*

5

QB\78448866.4

*Disclosure Statement; (II) Establishing Deadlines And Procedures Relating To Plan Confirmation Hearing; And (III) Addressing Related Matters* [Dkt. 105] (the "Confirmation Procedures Order"). In the Confirmation Procedures Order, the Court approved the Disclosure Statement subject to certain terms and conditions stated therein, and set forth certain conditions and deadlines for the confirmation process to proceed.

L. On January 19, 2023, Capital One filed its motion for relief from the automatic stay [Dkt. 88] (the "Stay Relief Motion"). In the Stay Relief Motion, Capital One requested that the Court, pursuant to Bankruptcy Code § 362(d)(1) and (d)(3), enter an order granting relief from the automatic stay so that Capital One may enforce its rights and remedies with respect to the Capital One Collateral. A hearing on the Stay Relief Motion was held on February 16, 2023. After the hearing, the Court entered its *Stipulated Order Granting Conditional Stay Relief In Favor Of Capital One, National Association* [Dkt. 104] (the "Order re Stay Relief").

M. Under the circumstances of this case and based on the agreement of the Debtor and Capital One stated at the Fifth Continued Hearing, cause exists for the Court to grant the relief provided in this Sixth Interim Order.

Accordingly, based upon the foregoing findings and conclusions, and upon the record made before the Court at the Fifth Continued Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED** that:

1. The Emergency Motion is hereby granted on an interim basis for an extended interim period (as stated below), subject to the terms and conditions set forth in this Sixth Interim Order. All objections to the entry of this Sixth Interim Order only have either been resolved as stated on the record at the Fifth Continued Hearing, or shall be overruled for purposes of this Sixth Interim Order only. (Capital One otherwise reserves the objections raised in its Limited Objection, Second Objection and Supplement.)

2. Pursuant to Bankruptcy Code § 363(c), the Debtor is authorized to use Cash Collateral under (and only under) the terms and conditions set forth in this Sixth Interim Order.

3. Unless terminated earlier under the terms of this Sixth Interim Order, the Debtor's authorization to use Cash Collateral under this Sixth Interim Order shall terminate on the date scheduled for the Sixth Continued Hearing stated below in this Sixth Interim Order. If (a) the Debtor fails to comply fully with the material terms and conditions of this Sixth Interim Order, (b) the Conditional Conversion Provision (defined below) does not continue in full force and effect, (c) the Stay Relief Effective Date (as defined in the Order re Stay Relief) occurs, or (d) the Buyer (as defined in the Confirmation Procedures Order) fails to timely file a sworn certification, as required in paragraph 3(b) of the Confirmation Procedures Order, then Capital One objects to any subsequent use of Cash Collateral by the Debtor, and the Debtor's authorization to use Cash Collateral for any purpose is terminated; provided, however, that the Debtor may thereafter obtain an emergency hearing on further authority to use Cash Collateral at a hearing set on at least three (3) business days' notice to Capital One and the United States Trustee. Nothing herein shall be deemed a waiver of (i) the Debtor's right to seek authority to continue its use of the Cash Collateral beyond termination of authority under this Six Interim Order, or (ii) the right of Capital One or any other party to object thereto.

4. A short-term budget prepared by the Debtor is attached as **Exhibit A** to this Sixth Interim Order (the "Budget"). Unless authority to use Cash Collateral under this Sixth Interim Order has been terminated earlier as provided herein and subject to the limitations stated below, the Debtor may use Cash Collateral to pay (i) ordinary and necessary operating expenses in accordance with the Budget, or (ii) other specific expenses with the prior written consent of Capital One. The authority of the Debtor to use Cash Collateral is subject to the following additional limitations -- without the prior written consent of Capital One or further Court order, (a) the Debtor shall not make any payments

7

to any insider or affiliate; (b) the Debtor shall not pay any expenses that would cause aggregate payments for any week under the Budget to exceed 110% of the aggregate amount shown in the Budget for that week; and (c) the Debtor shall not pay any expenses that would cause aggregate payments under any line item of the Budget to exceed 110% of the aggregate amount shown in the Budget for that line item (except that the Debtor may pay amounts in excess of this limitation with respect to the line item for payments to Georgia Power).

5.     No later than March 5, 2023, the Debtor shall pay the rent payment due under the Ground Lease for March, 2023, and provide written confirmation of the payment to Capital One.

6.     In accordance with the Second Interim Order, the Debtor previously designated a debtor-in-possession deposit account at Wells Fargo Bank as the "Cash Collateral Account" pursuant to the Second Interim Order. The Debtor shall at all times segregate and sequester all of the Cash Collateral (including, without limitation, all funds held by or for the Debtor and all rents collected from tenants of the Property) in the Cash Collateral Account. The Debtor may withdraw funds from the Cash Collateral Account only as necessary to pay authorized expenses in accordance with the provisions of this Sixth Interim Order. Without limiting the foregoing:

   a.     Continuing the requirement under the Second Interim Order, the Debtor shall promptly (i) deposit all funds it is holding (including, without limitation, all uncashed rent checks from tenants) and other Cash Collateral into the Cash Collateral Account, (ii) cause all funds or other Cash Collateral held for the Debtor by any of its principals or affiliates to be returned to the Debtor and deposited into the Cash Collateral Account, and (iii) identify in a written communication to Capital One any funds held for the Debtor by any third party, including the amount of such funds, the third party holding such funds, and the reasons and bases for the third party to be holding funds of the Debtor. (This provision does not in any way

8

limit or restrict the rights of the Debtor or any other party to investigate, or seek to avoid or recover, any payments or transfers made by the Debtor before or after the commencement of the Bankruptcy Case, and all such rights are expressly reserved.)

      b.     The Debtor shall direct all tenants of the Property to make rent payments directly into the Cash Collateral Account, or shall deposit all such rent payments in the Cash Collateral Account no later than two (2) business days after receipt by the Debtor.

7.     Paragraphs 6 and 7 of the First Interim Order relating to the Replacement Liens granted to Capital One shall continue and remain in full force and effect.

8.     The Debtor shall provide to Capital One the following financial reports and information:

      a.     On each Tuesday after September 28, 2022, the Debtor shall provide to Capital One a written report that includes the following: (a) the balance of the Cash Collateral Account (in which the Cash Collateral is segregated) at the end of the prior week; (b) a list of all withdrawals from the Cash Collateral Account, and each of the payments funded with those withdrawals; and (c) a list of all deposits in the Cash Collateral Account and the source of those deposits (including the name of tenants making rent payments).

      b.     No later than the tenth day of each month (including March 10, 2023), the Debtor shall provide to Capital One (i) with respect to the preceding month, an income statement, a cash flow statement, and a comparison of actual expenses paid against the Budget, and (ii) a schedule and aging specifically listing all unpaid post-petition expenses.

      c.     In addition, the Debtor shall promptly provide to Capital One all other financial information related to Cash Collateral or related matters as reasonably requested by Capital One or its attorneys or other representatives.

9. As provided in the Third Interim Order, the Fourth Interim Order, and the Fifth Interim Order, the Debtor shall continue to grant full and prompt access to Capital One's financial consultant (MCA Financial Group, Ltd. ("MCA Financial")) (i) to review all of the Debtor's books, records, and other financial information, including, without limitation, tenant leases, amendments, and agreements, and (ii) to review matters pertaining to the existing defaults under the Ground Lease, including, without limitation, the failure to complete construction of the parking deck at the Property. Pursuant to this Sixth Interim Order, the Debtor shall provide MCA Financial with access to the Debtor's books, records and financial information, but not the books and records of affiliates. Among other things, the Debtor will provide any requested reports that can be generated by the Debtor's Yardi financial management software, but the Debtor will not be required to allow MCA Financial to log into the Yardi system directly. Further, the Debtor's personnel shall reasonably cooperate with the review and analysis by MCA Financial, but shall not be required under this Paragraph to facilitate any direct communications by MCA Financial with tenants at the Property pursuant to this Sixth Interim Order.

10. As provided in the Fifth Interim Order (and with the agreement and full cooperation of the Debtor), MCA Financial has been, and continues to be, authorized to immediately commence a marketing process for the Property, to be conducted by MCA Financial, so that the Property can be exposed to the market. The Debtor's agreement with MCA Financial for this limited purpose will be in form and substance acceptable to Capital One. This marketing process is designed to identify other potential buyers if the Proposed Sale pursuant to the Debtor's Plan does not close by April 15, 2023. The Debtor shall cooperate fully with this marketing process, including, without limitation, by providing to MCA Financial diligence and other information and documents to allow MCA Financial to prepare a due diligence "data room" for potential buyers. MCA Financial will bill for its services on an hourly rate basis, and Capital One will pay MCA Financial's bills for its services with respect to the marketing process described in this Paragraph. Without

10

QB\78448866.4

limiting any other components of Capital One's secured claim, the amounts Capital One pays to MCA Financial with respect to the marketing process described in this Paragraph shall be additional Indebtedness owing to Capital One under the Loan Documents, and shall, along with all other Indebtedness, be secured by Capital One's existing liens and security interests in the Capital One Collateral.

11. No later than March 9, 2023, the Debtor shall provide to Capital One and file with the Court its proposed cash collateral budget for periods after March 17, 2023.

12. Nothing in this Sixth Interim Order will be deemed or construed as an admission or waiver by Capital One as to adequate protection, or any other issue in the Bankruptcy Case; nor, shall this Sixth Interim Order constitute consent by Capital One to the use of its Cash Collateral other than under the terms and conditions expressly provided herein. In addition, nothing contained in this Sixth Interim Order shall prejudice the rights of Capital One to seek any relief that Capital One may deem necessary and appropriate under the circumstances, or to object with respect to the Debtor's Plan.

13. Nothing in this Sixth Interim Order shall be construed as a finding or conclusion that Capital One or any other party holds a valid security interest, lien, or any interest in any of the Debtor's assets, and all parties' rights with respect to such issues are reserved.

14. The Court shall hold a continued in person hearing on the Emergency Motion (the "Sixth Continued Hearing") on **March 17, 2023 at 10:00 a.m**. in Courtroom 1204, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303

15. The Court has and hereby retains jurisdiction to enforce this Sixth Interim Order according to its terms.

###END OF ORDER###

11

QB\78448866.4

**Prepared and presented by:**

**QUARLES & BRADY LLP**

*/s/ Robert Harris*
John A. Harris (*pro hac vice*)
Arizona Bar No. 014459
john.harris@quarles.com
Robert P. Harris (*pro hac vice*)
Arizona Bar No. 011523
robert.harris@quarles.com
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004-2391
Telephone: (602) 229-5200
-and-
Walter E. Jones
Georgia Bar No. 163287
wjones@balch.com
BALCH & BINGHAM LLP
30 Ivan Allen Jr. Blvd. N.W., Suite 700
Atlanta, Georgia 30308
Telephone: (404) 261-6020
Facsimile: (404) 261-3656

ATTORNEYS FOR CAPITAL ONE, N.A.

**Consented to by:**

*/s/ Elizabeth Childers, with permission*
Elizabeth Childers
Georgia Bar No. 606503
Rountree Leitman Klein & Geer, LLC
Century Plaza I, Suite 350
2987 Clairmont Road
Atlanta, GA 30329
Telephone: (404) 990-3290
Facsimile: (404) 704-0246
echilders@rlkglaw.com

ATTORNEYS FOR DEBTOR


Distribution List:

The Clerk shall serve a copy of this order on all parties on the mailing matrix.

QB\78448866.4

| Budget | Week 12 Friday | Week 13 Friday | Week 14 Friday | Week 15 Friday | Week 16 Friday |
|---|---|---|---|---|---|
| Week Beginning Date | 2/20/2023 | 2/27/2023 | 3/6/2023 | 3/13/2023 | 3/20/2023 |
| Week Ending Date | 2/24/2023 | 3/3/2023 | 3/10/2023 | 3/17/2023 | 3/24/2023 |
| Prior Week - Beginning Cash | 51,306 | 27,586 | 52,376 | 48,222 | 45,631 |
| **Operating Cash Flow** | | | | | |
| **Revenue** | | | | | |
| Sonali Bora Enterprises | - | 3,538 | - | - | - |
| The Graivier Center P.C. | - | 18,944 | - | - | - |
| The Graivier Center P.C. | - | 10,112 | - | - | - |
| Pain Physicians of Atlanta | - | 21,850 | - | - | - |
| Pain & Spine Physicians Surgery Center, LLC | - | 18,904 | - | - | - |
| Aient Management Company, LLC | - | 25,101 | - | - | - |
| The Center for Advanced Medicine, LLC | - | 18,091 | - | - | - |
| Revue Pharmacy | - | 2,669 | - | - | - |
| Alpharetta Medical Associates PC | | 6,552 | | - | |
| Capital Contribution for Property Taxes | | | | | |
| **Total Revenue** | - | 125,762 | - | - | - |
| **Expenses** | | | | | |
| **Wages** | | | | | |
| Demarco McKenzie (demmck) | (198) | (198) | (198) | (198) | (198) |
| Jennifer Yearwood (jenyea) | (477) | (477) | (477) | (477) | (477) |
| Joyce Henderson (joyhen) | (300) | (300) | (300) | (300) | (300) |
| Keyona R Jones (keyjon) | (480) | (480) | (480) | (480) | (480) |
| Len Poplar (lenpop) | (612) | (612) | (612) | (612) | (612) |
| Leonard Holmes (leohol) | (200) | (200) | (200) | (200) | (200) |
| Rhonda McLendon (rhomcl) | (324) | (324) | (324) | (324) | (324) |

| Budget | Week 12 Friday | Week 13 Friday | Week 14 Friday | Week 15 Friday | Week 16 Friday |
|---|---|---|---|---|---|
| **Employees** | | | | | |
| Engineer | (1,563) | - | (1,563) | - | (1,563) |
| **Trash - Waste Management** | - | (3,300) | - | - | - |
| **Total Maintenance, Contract & Repairs** | - | (1,400) | - | - | - |
| Elevator Contract | | (1,300) | | - | |
| HVAC Repairs | | (1,100) | | - | |
| **Total Utilities (Electric, Gas, Water, Sewer, Phone** | - | - | - | - | - |
| Georgia Power | (19,567) | - | - | - | (17,000) |
| Fulton County Water | - | (3,000) | - | - | - |
| Telephone | - | (750) | - | - | - |
| **Janitorial Supplies** | - | (1,000) | - | - | - |
| **Water Sanitazation** | | (882) | | - | |
| **Lawn, Landscape, Grounds, Irrigation** | - | - | - | - | - |
| **IMPAK Software** | | (250) | | - | |
| **Parking lot repair & maintenance** | - | - | - | - | - |
| **Insurance Past Due & Paid Current $48,644.00** | - | (4,433) | - | - | - |
| **Fulton County Property Tax Payment** | | | | | |
| **City of Alpharetta Tax Payment** | | | | | |
| Legal Fees | - | - | - | - | - |
| CPA | - | - | - | - | - |
| UST Distribution Fee | - | - | - | - | - |
| **Total Expenses** | (23,721) | (20,006) | (4,154) | (2,591) | (21,154) |
| **Weekly Operating Cash Flow** | (23,721) | 105,756 | (4,154) | (2,591) | (21,154) |
| **Financing Cash Flow** | | | | | |
| Capital One Loan Payments | | | | | |
| Ground Lease Payments | - | (80,966) | - | - | - |
| **Weekly Financing Cash Flow** | - | (80,966) | - | - | - |
| **Weekly Free Cash Flow** | (23,721) | 24,790 | (4,154) | (2,591) | (21,154) |
| End of Week / Month Cash | 27,586 | 52,376 | 48,222 | 45,631 | 24,478 |