**IT IS ORDERED as set forth below:**

**Date: July 28, 2026**

_____
**Lisa Ritchey Craig**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| IN THE MATTER OF: | : | CASE NUMBER |
|---|---|---|
| | : | |
| 3333 ALPHARETTA LIFEHOPE | : | 22-57594-LRC |
| 10 ACRE LAND, LLC, | : | |
| | : | IN PROCEEDINGS UNDER |
| | : | CHAPTER 11 OF THE |
| DEBTOR. | : | BANKRUPTCY CODE |

**O R D E R**

Before the Court is the *Motion to Reopen Chapter 11 Case to Determine Scope of Purported Sale Free and Clear of Liens, Claims, and Interests* (Doc. No. 351, the "Motion"), filed by Einstein Integrative Care, Inc. ("Integrative") and 3333 Einstein Smartcare, LLC ("Smartcare," and collectively with Integrative, "Movants"). The Motion is opposed by Capital One, N.A., and CORA, LLC ("Respondents"). The Court has subject-matter jurisdiction over this core proceeding. *See* 28 U.S.C. § 1334(a); § 157(b)(2)(A); *see also In re Env't Wood Prods., Inc.,* 609 B.R. 901, 912 (Bankr. S.D. Ga.

2019); *In re MMH Auto. Grp., LLC*, 385 B.R. 347, 355 (Bankr. S.D. Fla. 2008), *as amended* (Mar. 18, 2008) ("[T]the bankruptcy court nonetheless always retains jurisdiction to consider the enforceability of its own orders, including reconsideration of a sale to determine if it was properly conducted.").

## Facts and Procedural History

On September 23, 2022, 3333 Alpharetta Lifehope 10 Acre Land, LLC ("Debtor") filed a voluntary Chapter 11 petition. Debtor's primary asset was a medical office building known as the Alpharetta LifeHope Medical Center located at 3333 Old Milton Parkway, Alpharetta, GA (the "Premises"). Integrative alleges that it occupies Suite 170 at the Premises under a lease dated October 1, 2019 (the "Integrative Lease"), between Debtor, as lessor, and Integrative, as lessee, executed on behalf of Debtor by Scott C. Honan ("Honan") and by Dr. Alan Einstein on behalf of Integrative and attested to by an unofficial witness and notary public. Respondents contend that the operative lease was between Debtor and Smartcare (the "Smartcare Lease"). Movants allege that neither Smartcare nor Integrative had previously seen the Smartcare Lease and note that the signatures on the Smartcare Lease were not attested to by an unofficial witness or notary public. The Integrative Lease predates the Smartcare Lease, which was dated November 21, 2019.

According to information obtained by Respondents from the Georgia and Delaware secretaries of state, Smartcare existed as an entity in 2019, but Integrative did not.

2

Specifically, (1) Smartcare was formed as a Delaware limited liability company on November 21, 2019; (2) Smartcare was authorized to transact business in Georgia on November 25, 2019; (3) Dr. Einstein was named as Smartcare's registered agent in Georgia; (4) the Georgia Secretary of State revoked Smartcare's certificate of authority on October 22, 2020; (5) Smartcare "is no longer in existence and good standing under the laws of the State of Delaware having become canceled the first day of June, A.D. 2023, by reason of its neglect, refusal, or failure to pay its annual taxes"; (6) Integrative was formed as a Delaware corporation on July 25, 2023; (7) Integrative "is no longer in existence and good standing under the laws of the State of Delaware having become forfeited the thirtieth day of November, A.D. 2024, for failure to obtain and designate a registered agent"; and (8) Integrative was never authorized to transact business in Georgia.

Debtor failed to list Integrative or Smartcare on Schedule G of its Schedules of Assets and Liabilities.   (Doc. No. 34, as amended by Doc. No. 52).   As a result, Movants were not on the Court's mailing matrix (the "Matrix").

On May 23, 2023, Debtor and secured creditor Capital One, National Association ("Capital One"), filed a joint motion to sell Debtor's assets free and clear of liens, encumbrances, and interests.   (Doc. No. 154, the "Sale Motion").   The Sale Motion was not served on Smartcare or Integrative.   The Clerk of Court served the Order and Notice of Hearing (Doc. No. 161) to the parties on the Matrix, which, again, did not include Movants.   (Doc. No. 165).   On June 20, 2023, the Court entered an order authorizing the

3

sale procedures and procedures relating to assumption and assignment of executory contracts and unexpired leases.  (Doc. No. 168, the "Bid Procedures Order").  The Bid Procedures Order was also served on the Matrix, which, again, did not include Movants. (Doc. No. 169).  The first document purportedly mailed to Smartcare was the Notice of Cure Amounts and Deadline to File an Objection to the Assumption and Assignment of the Subject Executory Contract or Lease (Doc. No. 177, the "Cure Notice"), which provided notice of a hearing on the Sale Motion and a copy of the Bid Procedures Order. The Certificate of Service for the Cure Notice (Doc. No. 178) indicates service on Smartcare at Suite 170.  The Cure Notice was not served on Integrative.  The Cure Notice was not directed to an officer of Smartcare or Integrative.  Notwithstanding the certificate of service for the Cure Notice, Movants allege that neither Smartcare nor Integrative received the Cure Notice.

On July 2, 2025, Debtor and Capital One filed a Joint Motion for Order Scheduling Final Hearing on Pending Sale Motion to Consider Final Approval of Proposed Sale Transaction.  (Doc. No. 312, the "Hearing Request").  On July 3, 2023, the Court entered its Order Scheduling Final Hearing on Pending Sale Motion to Consider Final Approval of Proposed Sale Transaction.  (Doc. No. 313, the "Hearing Order").  On July 7, 2025, Capital One filed a Notice of Final Hearing on Pending Sale Motion to Consider Final Approval of Proposed Sale Transaction.  (Doc. No. 315, the "Hearing Notice").  The Hearing Request, Hearing Order, and Hearing Notice were served by Capital One on the

4

Matrix, which did not include Movants.   (Doc. No. 316).   The second document purportedly mailed to Smartcare was the Second Notice of Cure Amounts and Deadline to File an Objection to the Cure Amounts and/or the Assumption and Assignment of the Subject Executory Contract or Lease.   (Doc. No. 317, the "Second Cure Notice").   The Second Cure Notice included a copy of the Hearing Order.   According to the certificate of service for the Second Cure Notice, the Second Cure Notice was served on Smartcare at Suite 170, but Integrative was not served.   (Doc. No. 318).   The Second Cure Notice was not directed to an officer of Smartcare.

On August 25, 2025, the Court issued an oral ruling on the Sale Motion and entered an order approving the sale on September 2, 2025.   (Doc. No. 335, the "Sale Order").   The Sale Order was served on the Matrix, which did not include Movants.   (Doc. No. 336).   Debtor filed a Report of Sale on October 7, 2025.   (Doc. No. 337, the "Report of Sale").   The Report of Sale indicates that the Premises were sold to CORA, LLC ("CORA"), which is an entity related to Capital One.

On October 8, 2025, Debtor filed a motion to dismiss the bankruptcy case, and, following a hearing, the Court dismissed the case.   (Doc. No. 348).   After the sale and dismissal of Debtor's bankruptcy case, CORA asserted that it purchased the Premises free and clear of any leasehold interest of Smartcare or Integrative in and to Suite 170.   On March 12, 2026, CORA sent a demand for possession of the Premises.   On March 25, 2026, CORA initiated a dispossessory action against Smartcare in the Magistrate Court of

5

Fulton County, Case No. 26ED382515 (the "Dispossessory Proceeding"). In response, Movants have filed the Motion, seeking to reopen the bankruptcy case to obtain a determination that the sale to CORA was subject to, and not free and clear of, the rights and interests of Integrative. Movants have not asked the Court to determine whether the Smartcare Lease or the Integrative Lease is the operative lease. Instead, Movants propose that such a determination be made in connection with the Dispossessory Proceeding.

Respondents oppose the Motion, asserting that reopening the case would be futile, as the Court cannot provide relief to Movants. Respondents contend that the requirement that the Sale Motion be served in accordance with Rule 7004(b)(3) is a mere procedural right and that failure to comply with the rule is not fatal because Movants received actual notice of the Sale through the Second Cure Notice. And, even if, as Movants allege, they did not receive the Second Cure Notice, Respondents argue that the Sale Order is not void for lack of due process because the Second Cure Notice was mailed to Movants in a manner that was reasonably calculated to provide notice of the terms of the Sale, its effect on the Smartcare Lease/Integrative Lease, and an opportunity to be heard. Respondents also note that the bankruptcy case was dismissed before the case was closed and that reopening the case alone may not be sufficient to allow the Court to grant the relief requested by Movants, but that setting aside the dismissal order at this point could create additional issues. During the Hearing, the United States Trustee echoed this concern.

<u>Conclusions of Law</u>

6

Section 350(b) of the Bankruptcy Code[1] provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Section 350(b) contemplates that "reopening" is available for "fully administered" and closed cases. *In re Bailey*, 2009 WL 6498530, at *1 (Bankr. N.D. Ga. Sept. 3, 2009). Reopening a case usually occurs to "take care of some detail that was overlooked or left unfinished at the time the case was closed." *In re Grp. Mgmt. Corp.*, 2022 WL 14929963, at *14–16 (Bankr. N.D. Ga. Oct. 24, 2022). "Generally, a closed case must be reopened before the bankruptcy court may entertain a substantive matter." *Id*. at *15 (quoting *Wilson v. Robl*, 2007 WL 2746665, at *3 (W.D. Ky. Sept. 19, 2007); *see also In re Woldeyohannes*, 2022 WL 3135287, at *1 (Bankr. D. Conn. Aug. 3, 2022); *In re Levy*, 2018 WL 1579888, at *2 (Bankr. D. Conn. Mar. 29, 2018) (holding that the reopening of a case, by itself, has no independent legal significance and determines nothing with respect to the merits of any requested order). Movants have the burden of establishing cause to reopen the case. *See Env't Wood Prods., Inc.*, 609 B.R. at 912 (citing *In re Dicks*, 579 B.R. 704, 708 (Bankr. E.D.N.Y. 2017)).

Where, as in this case, the case was dismissed before being administratively closed, the Court may reopen the case for limited purposes. *See In re Grp. Mgmt. Corp.*, 2022 WL 14929963, at *14–16 (Bankr. N.D. Ga. Oct. 24, 2022); *In re Ross*, 278 B.R. 269, 273 (Bankr. M.D. Ga. 2001) (noting that a dismissed case can be reopened to permit a debtor

---

[1] Unless other noted, all further references to the "Code" are to 11 U.S.C. §§ 101, *et seq*.

7

to amend schedules); *In re Stewart*, 2020 WL 597843, at \*1 (Bankr. D.D.C. Feb. 5, 2020); *but see In re Terrace Hous. Assocs., Ltd*., 2023 WL 7030051, at \*8 (Bankr. E.D. Pa. Oct. 25, 2023) (agreeing "with the great weight of authority holding that a dismissed case is not subject to reopening under § 350(b) of the Bankruptcy Code").   If the Court reopened this case, it would have jurisdiction to grant the relief requested by Movants without vacating the dismissal order.   *See In re Chateaugay Corp*., 201 B.R. 48, 62 (Bankr. S.D.N.Y. 1996), *aff'd in part,* 213 B.R. 633 (S.D.N.Y. 1997) ("Bankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders wholly independent of the statutory grant of jurisdiction under 28 U.S.C. § 1334.") (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934); *Volvo White Truck Corp. v. Chambersburg Beverage (In re White Motor Credit Corp.)*, 75 B.R. 944, 947–48 (Bankr. N.D. Ohio 1987) (holding that "ancillary jurisdiction to interpret and enforce prior orders include[d] hearing a purchasers' action for declaratory and injunctive relief to enforce orders of sale")); *In re Millenium Seacarriers, Inc*., 458 F.3d 92, 97 (2d Cir. 2006) (holding that bankruptcy court did not err in retaining jurisdiction to enforce its prior sale order upon dismissal of the bankruptcy case because "[j]udicial economy and convenience to the parties are both served by the Bankruptcy Court's interpretation of its own Sale Order due to its familiarity with the facts," and fairness and comity were not affected either way"); *Matter of Stat. Tabulating Corp., Inc.*, 60 F.3d 1286, 1289 (7th Cir. 1995) ("The matter on appeal involved a discrete dispute between two creditors that was not mooted by the dismissal of the bankruptcy itself.   In

8

challenging the turnover order, the government was asking the district court to interpret the agreed order which emerged from the adversary proceeding between itself and LaSalle. The debtor's rights were not implicated in this dispute, as the sole issue was whether LaSalle was entitled to all or only a portion of the proceeds.   The district court's remand for further exploration of that issue did not require the court to 'dis-inter' the debtor, as LaSalle insists.   Factually, then, the appealed matter was very much like the appeal of a separate adversary proceeding."); *In re Aheong*, 276 B.R. 233, 242 (B.A.P. 9th Cir. 2002) (holding that the "bankruptcy court had ancillary jurisdiction" to interpret and enforce its own general order and that "jurisdiction was not dependent on reopening Debtor's case or vacating the Dismissal Order").[2]

"A bankruptcy case should not be reopened where it would be a futile exercise or a waste of judicial resources."   *Id*. at 17-18 (citing *Redmond v. Fifth Third Bank*, 624 F.3d 793, 803 (7th Cir. 2010)).   "If the moving party cannot obtain the substantive relief which it intends to seek, 'then there is no reason to grant a motion to reopen.'"   *Id*. (quoting *In re Frazer/Exton Dev*., 503 B.R. 620, 635 (Bankr. E.D. Pa. 2013)).   Additionally, the decision to reopen depends on the facts and circumstances of the case, and the Court may consider "a number of nonexclusive factors," such as "(1) the length of time that the case

---

[2] Based on the holding of *Aheong*, one could argue that the Court need not reopen the case to consider the relief requested by Movants.   However, as the Court finds that it has jurisdiction to answer the ultimate question asked by Movant, the Court will grant the relief requested by reopening the case and will schedule further proceedings if necessary.

was closed; (2) whether a nonbankruptcy forum has jurisdiction to determine the issue that is the basis for reopening the case; (3) whether prior litigation in the bankruptcy court determined that another court would be the appropriate forum; (4) whether any parties would suffer prejudice should the court grant or deny the motion to reopen; (5) the extent of the benefit to any party by reopening; and (6) whether it is clear at the outset that no relief would be forthcoming if the motion to reopen is granted." *Id*. at \*18 (citing *In re Env't Wood Prod., Inc.*, 609 B.R. 901, 912 (Bankr. S.D. Ga. 2019)).

As to the merits of the ultimate relief sought, Movants seek a declaration that the Sale Order is void and unenforceable, at least as to Movants.   Such a declaration would enable Movants to obtain a decision in the state court regarding the nature and extent of any leasehold interest that may be held by either Smartcare or Integrative.   An order is void "only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard."   *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) (citations omitted).   In this case, Movants argue that the order is void for lack of personal jurisdiction.   "The party attacking the judgment on insufficiency of process grounds bears the burden of demonstrating the judgment is void."   *Puckett v. Ramirez*, 826 F. App'x 716, 718–19 (11th Cir. 2020) (citing *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1298–99 (11th Cir. 2003)).

The Bankruptcy Code and Rules allow for sales of estate property outside the

10

ordinary course of a debtor's business upon twenty-one days' notice to all creditors.   11

U.S.C. § 363; Fed. R. Bankr. P. 2002(a)(2), 6004(a).   When, however, the sale is to be

"free and clear" of all interests within the meaning of § 363(f), the motion must also be

served on all "parties who have liens or other interests in the property to be sold" in the

same "manner provided for service of a summons and complaint."   *See* Fed. R. Bankr. P.

6004(c), 9014(b); *see also In re Takeout Taxi Holdings, Inc.*, 307 B.R. 525, 530 (Bankr.

E.D. Va. 2004) ("Strict compliance with procedural matters when presenting a motion to

sell free and clear of liens and interests is especially important because the trustee is

disposing of . . . a third party's interest in the property potentially without the consent of

the . . . third party.").   Rule 6004(c) further provides that notice of the sale must include

the hearing date and the objection deadline.   Fed. R. Bankr. P. 6004(c).

Serving a sale motion in the same manner required of a summons and complaint is

"the 'process' to which a party with an interest in property is 'due' before it can be deprived

of its property rights in a sale 'free and clear.'"   *Archer-Daniels-Midland Co. v. Country*

*Visions Coop.*, 628 B.R. 315, 321 (E.D. Wis. 2021), *aff'd*, 29 F.4th 956 (7th Cir. 2022)

("*ADM*"); *see also In re Evans*, 656 B.R. 776, 784 (Bankr. N.D. Ill. 2024) (noting the

difference between the rules that require notice to creditors (Rule 2002) and the rules

governing service of process (Rule 7004, made applicable to contested matters by Rule

9014)).   Without proper service of a sale motion in accordance with Rule 7004(b)(3), the

bankruptcy court may lack personal jurisdiction over a party with a leasehold interest in

the property to be sold.  *ADM*, 628 B.R. at 321.  Personal jurisdiction over an interest

holder is necessary for "a judgment to have any binding effect" on the party.  *Id*.  "Want

of jurisdiction is a matter that may always be set up against a judgment when it is sought

to be enforced, or when any benefit is claimed under it."  *Id*. at 322 (quoting *Earle v.

McVeigh*, 91 U.S. 503, 507 (1875)).

Respondents argue that lack of service of process can be overlooked when the party

has actual knowledge of the relief sought and does not appear and does not appeal the

resulting order or judgment.   In support, Respondents rely on *United Student Aid Funds,

Inc. v. Espinosa*, 559 U.S. 260 (2010), in which the Supreme Court held that an order

confirming a plan that discharged nondischargeable student loan interest was not void due

to debtor's failure to file an adversary proceeding.   As noted by the district court in *ADM,*

however*,* the facts of *Espinosa* are distinguishable from those at issue in *ADM* and in this

case.  *Espinosa* did not involve "an attempt to bind a party that was not brought within the

bankruptcy court's jurisdiction," as the creditor in *Espinosa* had filed a proof of claim,

thereby submitting itself to the jurisdiction of the bankruptcy court.   While it is true that

actual notice of a proceeding may satisfy the requirements of due process in some cases,

*Espinosa* does not stand "for the broad proposition that some informal notice always

satisfies due process."  *Id*.   In *Espinosa*, the bankruptcy court had personal jurisdiction

over the creditor and subject matter jurisdiction, and the creditor received formal notice of

the bankruptcy proceeding, but allowed confirmation of a plan that provided erroneous

treatment to its claim (treatment that should have required the filing of an adversary proceeding) without objecting or appealing the confirmation order.   Under those circumstances, the Supreme Court held that the confirmation order was not void.

In contrast, the district court in *ADM* found that a party with a right of first refusal to purchase property of the estate who was not provided formal notice of § 363(f) sale and was not served with process as required by Rule 6004(c) "could not be faulted for failing to object to or appeal from the confirmation order; not having been made a party, it had no standing to object or appeal." *ADM*, 628 B.R. at 323–24.   In short, the district court found no law to support the argument that the interest holder was "required to intervene, make itself a party, and affirmatively submit itself to the bankruptcy court's jurisdiction." *Id*. at 324.   In answer to the purchaser's argument that actual notice "is sufficient to satisfy due process requirements," the district court explained that, whether actual notice satisfies due process "depends on the circumstances," citing *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314 (1950), and that "*Espinosa* does not . . . provide a blank check to disregard procedure, especially procedure enacted for the protection of third parties' property rights, so long as the third party receives some minimal notice."   *ADM*, 628 B.R. at 324; *see also In re Takeout Taxi Holdings, Inc.,* 307 B.R. at 531 ("The mailing of the notice of the hearing does not cure the defect in service of the motion itself.").

The facts of this case are more like those of *ADM* than they are like the facts of *Espinosa*.   As in *ADM*, Movants were not on the service list and did not receive notice of

Debtor's bankruptcy petition when it was filed.   Nor were Movants served with the Sale

Motion.[3]   This is akin to a defendant in an adversary proceeding not being served with the

complaint and summons, and a defendant that becomes aware of a complaint, but is not

served with it, is not subject to the jurisdiction of the court.   *See Dan-Bunkering (Am.),*

*Inc. v. Ichor Oil, LLC*, 561 F. Supp. 3d 710, 716 (N.D. Tex. 2021) ("'[A]ctual notice to a

defendant, without proper service, is not sufficient to convey upon the court jurisdiction to

render default judgment against' a party."); *see also In re Long*, 677 B.R. 77, 102 (Bankr.

S.D. Ohio 2026) ("[A]ctual knowledge of a lawsuit is not a substitute for proper

procedure."); *In re Teligent Inc.*, 485 B.R. 62, 69 (Bankr. S.D.N.Y. 2013) ("[E]ven if the

mailing of the Contempt Order provided actual notice of the adversary proceeding, it did

not cure the insufficient service of process and confer personal jurisdiction.").   Like the

interest holder in *ADM* and unlike the creditor in *Espinosa*, Movants did not file a claim or

take other action to submit themselves to the jurisdiction of this Court.[4]   Accordingly, the

---

[3] During the Hearing, the issue was raised as to whether Movants could have been served with the Sale Motion in accordance with Rule 7004(b)(3), as Smartcare's Certificate of Authority to conduct business in Georgia was revoked by on October 22, 2020, and Integrative was apparently never authorized to transact business in Georgia.   The Court agrees with Movants that a foreign limited liability company must maintain a registered office and registered agent for service of process in the state; the registered agent of a foreign LLC in Georgia is the agent "on whom may be served any process, notice, or demand required by law to be served"; a foreign LLC's authority to conduct business is revoked if the required registrations are not submitted; but revocation of authority to transact business "does not terminate the authority of the registered agent," O. C. G. A. § 14-11-703, 709, such that the revocation of the authority of a foreign LLC to do business does not affect the authority of the registered agent to accept service of process. Additionally, in their post-hearing brief, Respondents argue that Rule 7004(b)(3) did not apply to the Sale Motion because neither Integrative nor Smartcare existed as legal entities at the time the Cure Notice and Second Cure Notice were mailed.   The Court finds that Rule 7004(b)(3) did apply to the Sale Motion and required proper service of the Sale Motion upon either Smartcare or Integrative, whichever was party to the lease, and that both Smartcare and Integrative were in existence under Delaware law on the date that the Sale Motion was filed (May 23, 2023).

[4] Respondents also cite to *In re Le Center on Fourth, LLC*, 17 F.4th 1326 (11th Cir. 2021) and *In re Iliceto*, 706 F. App'x 636 (11th Cir. 2017).   In *Le Center on Fourth*, the Eleventh Circuit Court of Appeals relied on *Espinosa* to

14

Court lacked personal jurisdiction over Respondents.   *Zeron v. C&C Drywall Corp., Inc.*,
2020 WL 13420869, at \*2 (S.D. Fla. Mar. 16, 2020) ("[I]f service was insufficient, the
judgment is void and the Court has no discretion to deny the Rule 60(b)(4) motion to vacate
unless the defendant has waived his right to object to inadequate service.").   The Sale
Order is void as it pertains to Movants' interests, whatever they may be.   *See In re Harlow
Props., Inc.*, 56 B.R. 794, 799 (B.A.P. 9th Cir. 1985).[5]

Respondents make a good argument that the Sale Documents that were mailed to
Suite 170 provided sufficient information to alert Movants that the Integrative Lease or the
Smartcare Lease would be affected by the sale of the Property.   But Movants dispute
having received those documents.   Even so, the Sale Documents that Capital One and

---

hold that a creditor received due process regarding confirmation of a Chapter 11 plan that contained releases, even
though the creditor did not receive notice of the inclusion of the releases required by Rule 2002(c)(3).   The court
concluded that the creditor had been given sufficient actual notice of the contents of the plan because the creditor's
attorney received the plan and the disclosure statement and the failure to comply with a rule that required a specific
manner of notice regarding the releases did not render that notice insufficient.   In that case, as in *Espinosa*, the issue
was not whether the confirmation order was void for lack of personal jurisdiction.   As to confirmation, there was no
requirement that the plan and disclosure statement be served on the creditor in the same manner as service of a
complaint and summons.   Accordingly, the Court is not persuaded that the holding of *Le Center on Fourth* requires
the Court to find that it had personal jurisdiction over Movants.   Similarly, in *Iliceto*, as in *Espinosa*, the complaining
creditor had filed a proof of claim in the case, such that personal jurisdiction was not at issue.   Finally, Respondents
rely on *In re Maizus*, 2016 WL 7013462 (D.N.J. Nov. 30, 2016) as a case with similar facts involving a motion to sell
free and clear of liens.   However, in *Maizus*, the creditor seeking a determination that the sale order did not impact
its lien due to a lack of compliance with Rule 7004(b)(3) had filed a proof of claim and the debtors had provided notice
of the sale motion to the creditor at the address it provided.   *Id*. at \*1.

[5] During the Hearing, the issue was raised as to whether Movants could have been served in accordance with Rule
7004(b)(3), as Movants' Certificate of Authority to conduct business in Georgia had been revoked by the Georgia
Secretary of State on October 22, 2020.   Additionally, in its post-hearing brief, Respondents assert that Movants did
not exist as corporate entities under Delaware law at the time the Cure Notice or the Second Cure Notice were served
or at the time leases were executed.   The Court need not determine whether any of this impacts the validity of a lease
or which entity was legally obligated under a lease, as the Sale Motion was not served on either party or Dr. Einstein,
such that the Court lacked personal jurisdiction over Movants or Dr. Einstein.   The Court holds that, whatever interest
any party had under any lease (if any) was unaffected by the Sale Order, and this Court will leave the determination
as to the validity and proper party to the state court.

15

Debtor claim to have mailed to Suite 170 were not directed to the attention of an officer or agent authorized to receive service of process, as required by Rule 7004(b)(3).   Under the circumstances, the Court cannot agree with Respondents that the "mailbox presumption" prevents Movants from disclaiming receipt.   The reason Rule 7004(b)(3) requires that service of process be directed to an officer or agent authorized to accept service of process is to increase the odds that a complaint and summons will be received by someone with sufficient knowledge to recognize what it is and with authority to act on it.   *See In re Pac. Cargo Servs., LLC*, 2014 WL 2041821, at *6 (D. Or. May 9, 2014) ("In sum, notice regarding a proposed sale of the property of bankruptcy estate must be served by first class mail on an authorized representative of the creditor who will have some understanding as to what the piece of paper in the mail actually means."); *see also Teligent Inc*., 485 B.R. at 68 ("The requirement to direct the mailing to the attention of 'an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process' is intended to ensure that the summons and complaint expeditiously reaches the appropriate decision maker in the organization.").   Capital One and Debtor did not comply with the requirements of Rules 6004, 9014, and 7004(b)(3).   Respondents are not entitled to a presumption that the proper party, not named on the piece of mail, received it. *Accord In re Jafroodi*, 651 B.R. 13 (Bankr. C.D. Ca. 2023) (stating that the trustee was not entitled to a presumption that mail was received by an individual when it was not mailed to his place of regularly conducted business as required by 7004(b)(1)); *Teligent Inc.*, 485

16

B.R. at 69 ("Mailing process to a corporation's post office box without directing it to the attention of the proper agent does not satisfy Rule 7004(b)(3), . . . and does not give rise to a presumption that the appropriate person within the organization received actual knowledge of the suit.") (internal citations omitted).

Accordingly, the Court cannot find that reopening the case would be futile.   As to the other nonexclusive factors considered when determining whether to reopen a case, Movants did not wait an excessively long time to seek to reopen the case; no one has asserted that a nonbankruptcy forum should determine whether the Sale Order is void; the prejudice to Movants if the Court denies the Motion seems to outweigh the prejudice to Respondents if the Court grants the Motion; and Movants would benefit from reopening the case to obtain a determination regarding the effectiveness of the Sale Order. Accordingly, the Court concludes that the case should be reopened.

That being said, it is not clear what relief the Court should grant beyond that.   As noted by the court in *In re MMH Automotive Group, LLC,* 385 B.R. 347, 359–60 (Bankr. S.D. Fla. 2008), *as amended* (Mar. 18, 2008), the "consequence of the failure to give notice of a sale free and clear of an interest or property right to a party who was entitled to such notice has been dealt with in three general approaches": (1) by ruling that "any sale that purports to transfer estate property free and clear of a right, claim or interest without notice to the holder of the property of that interest is void and the sale must be rescinded"; (2) by holding that "a sale order with a notice defect is only invalid against the party who did not

17

receive notice"; and (3) by fashioning "an equitable remedy by balancing the rights of the party whose interests have been compromised without notice, with the rights of a purchaser who relied on the selling party, the trustee or debtor-in-possession, to properly notify all parties in interest and who relied on a final order confirming the sale free and clear of all liens, claims and interests." *Id*.   The *MMH Automotive Group* court, in recognition of the importance of protecting the "confidence in the finality of bankruptcy sales" and the expressed policy against setting aside bankruptcy sales, fashioned an equitable remedy that left the sale intact while compensating the leaseholder that failed to receive notice of the sale free and clear of its lease in the manner it would have been compensated had it received sufficient notice of the sale.   *Id*. at 361, 372 (holding that, because the trustee could have compelled the lessee to accept a money satisfaction of its lease, the property could have been sold free and clear of the lease and the lessee would have had the right under § 363(e) to seek adequate protection of its leasehold interest; accordingly, the sale order would be enforced against the lessee, but the lessee would receive the value of its interest paid from the sale proceeds).   Movants have asked for a declaration that the Sale Order has no effect on the Integrative Lease or the Smartcare Lease.   Respondents have simply argued that there was not a lack of due process and have not addressed the question of how to proceed in the event the Court found that it lacked personal jurisdiction over Movants. Accordingly, the Court will grant the Motion to the extent that it seeks to reopen the case and will declare that the Court lacked personal jurisdiction over Movants.   Therefore,

18

IT IS ORDERED that the Motion is GRANTED, and the case is reopened;

IT IS FURTHER ORDERED that the Court lacked personal jurisdiction over Integrative or Smartcare at the time the Sale Order was entered;

IT IS FURTHER ORDERED that, within sixty (60) days of the entry of this Order, the parties shall confer and file a joint status report as to whether further proceedings are necessary;

IT IS FURTHER ORDERED that, if no further actions are taken in this case within seventy (70) days of the entry of this Order, the Clerk shall close the case.

**END OF DOCUMENT**

**Distribution List**

**Elizabeth Ann Childers**
Rountree Leitman Klein & Geer, LLC
Century Plaza I, Suite 350
2987 Clairmont Rd.
Atlanta, GA 30329

**3333 Alpharetta Lifehope 10 Acre Land, LLC**
11680 Great Oaks Way
Suite 120
Alpharetta, GA 30022

**Robert P. Harris**
Quarles & Brady LLP
Renaissance One, Suite 600
Two North Central Avenue
Phoenix, AZ 85004-2391

**G. Frank Nason, IV**
Lamberth Cifelli Ellis & Nason PA

Ste 290
6000 Lake Forrest Drive, NW
Atlanta, GA 30328

**Walter E. Jones**
Balch & Bingham, LLP
Suite 700
30 Ivan Allen Jr. Blvd, NW
Atlanta, GA 30308

**Alan Hinderleider**
Office of the United States Trustee
362 Richard B Russell Federal Building
75 Ted Turner Drive, S.W.
Atlanta, GA 30303